NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 2, 2015[*]
Decided September 9, 2015

**Before**

DIANE P. WOOD, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 14-3492

| | |
|---|---|
| THOMAS L. BURSE, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 13-C-804 |
| | |
| MARK GOTTLIEB, et al., | William E. Callahan, Jr., |
| *Defendants-Appellees*. | *Magistrate Judge*. |

No. 15-1649

| | |
|---|---|
| THOMAS L. BURSE, | Appeal from the United States District |
| *Defendant-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 13-C-1200 |
| | |
| STATE OF WISCONSIN, | Lynn Adelman, |
| *Plaintiff-Appellee*. | *Judge*. |

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

**O R D E R**

We have consolidated these two appeals for disposition. Both cases arose after the Wisconsin Department of Transportation discovered that Thomas Burse, a state contractor, falsified his education qualifications on his resume and overbilled the Department by $ 1.3 million. The Department suspended (and eventually barred) him from the state's Disadvantaged Business Enterprise (DBE) program, terminated his state contracts, and withheld payments to Burse in order to mitigate its losses. This forced Burse and his business into bankruptcy, where the state of Wisconsin filed an adversary proceeding under 11 U.S.C. § 523(a)(2)(A). That statute prevents discharge of debts obtained through fraud, and the state invoked it to prevent Burse from discharging through bankruptcy the $882,000 he still owed to the state. The bankruptcy court ruled that the debt was non-dischargeable, the district court affirmed, and in the first of these two consolidated appeals (No. 15-1649) we affirm as well. In a separate suit, the second of our two appeals (No. 14-3492), Burse alleges that he was deprived of his due process rights when he was suspended from the DBE program without a pre-suspension hearing. The district court granted summary judgment for the defendants, and because Burse received all the process that he was due, we affirm that judgment as well.

The DBE program aims to boost state contracts awarded to businesses with socially and economically disadvantaged owners who meet state qualifications. Burse and his construction-management company, Buveck, began to participate in Wisconsin's DBE program in 2003, but in 2010 the state found two problems with his participation. The first was that Burse had lied about his educational background. In one resume Burse asserted that he had earned an engineering degree from Illinois State University, but in another he claimed to have an engineering degree from Bradley University. After the state asked Burse to verify his Bradley degree, he twice provided forged transcripts, and Bradley University later reported that Burse was not a graduate. The second problem was with overbilling. An audit in 2010 revealed that Burse was billing for the same work twice, inflating the number of hours employees worked, and exaggerating their rate of hourly pay. In the auditor's opinion, the sheer number of "mistakes" in the records combined with evidence of forged employee signatures on timesheets and unauthorized changes to timesheets established that Burse had committed fraud.

After uncovering these two problems, the state sent Burse notice on October 14, 2011, that it was suspending him as a contractor. The notice informed him of the reasons that the state had found fraud and overbilling and that Burse owed the state $882,528.24 because of his overbilling. The state also notified him that it would not approve him for new transportation contracts during the suspension, it was posting his name on the

published list of suspended contractors, and it was reviewing his current contracts to determine whether they would be terminated. The state gave him a prompt opportunity for a hearing—fifteen days later—to contest the suspension, but Burse requested and received longer—to November 25—to respond. During the next month the state provided Burse's attorney examples of the fraud uncovered in the audit and offered Burse a chance to submit rebuttal evidence. Burse never responded with any exculpatory evidence. His attorney merely asserted that the state had not specified the grounds for suspension and supplied only limited proof of the audit's findings or Burse's involvement in the problems identified in the audit. On December 1, the state barred Burse and his company from future transportation contracts and terminated the contracts on his current projects.

Burse filed for bankruptcy, and in an adversary proceeding the state claimed that Burse's debt to the state was obtained through fraud and could not be discharged. The bankruptcy court held a trial at which the auditor testified that the widespread overstatements in Burse's company records could not be attributed to mere negligence. The bankruptcy judge did not believe Burse's response that he did not know that the invoices and timesheets overstated billings. The judge observed that Burse signed many of the falsified timesheets, Burse oversaw his company's billing practices, and his company had a pattern of creating false time sheets and bills. The bankruptcy court therefore found fraud and ruled that the debt was not dischargeable. Burse appealed to the district court, which affirmed the bankruptcy court's ruling.

In the first appeal, Burse challenges the bankruptcy court's ruling. Our review focuses on the bankruptcy court's rulings, rather than those of the district court, and we review its factual findings for clear error and legal conclusions de novo. *See In re marchFIRST, Inc.*, 573 F.3d 414, 416 (7th Cir. 2009). To prove that a debt is non-dischargeable because of fraud, a creditor must prove by a preponderance of evidence that "(1) the debtor made a false representation or omission, (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, (3) upon which the creditor justifiably relied." *Ojeda v. Goldberg*, 599 F.3d 712, 716–17 (7th Cir. 2010).

Burse points to nothing that calls the bankruptcy court's ruling into question. As to the first element, Burse does not challenge that the invoices and timesheets contained false representations. On the second element, Burse contends only that no "direct" evidence made him responsible for the "mistakes" that lead to the overbilling. But the bankruptcy judge was entitled to rely on circumstantial evidence, which showed that, by signing inflated timesheets and overseeing a billing system that regularly overcharged

the state, Burse knew about the falsehoods and intended to deceive the state. *See Matter of Sheridan*, 57 F.3d 627, 633 (7th Cir. 1995). For the final element, Burse seems to argue that the state was not justified in relying on his falsified resume for his DBE certification because DBE regulations do not require a college degree. But the non-dischargeable debt stems from the intentional overbilling, not the DBE certification. True, the bankruptcy judge said that, "arguably, under that premise [that the resume fraud led to an undeserved DBE certification], every dollar that Buvek collected when it acted as a DBE sub should be non-dischargeable." But the bankruptcy judge recognized that the state was not asking for repayment of "every" dollar, but rather only the debts from the overbilling. Accordingly, the fraud and non-dischargeability rulings were proper, so we affirm the first judgment.

The second appeal arises from Burses's separate suit alleging that his seven-week suspension violated his procedural rights. In it he raises two claims that he continues to pursue on appeal. First, he contends that the state violated due process by suspending him and withholding contract payments before it gave him a chance to refute the charges. The district court rejected this claim. It accepted that Burse was deprived of property interests in the form of both a continued contractual relationship and contract payments. But in light of the state's significant interest in preventing fraud, the minimal risk of an erroneous suspension based on the audit, and the prompt opportunity to oppose the suspension, Burse received due process. The court also rejected Burse's second claim, which is that by publicizing his suspension the state defamed him in violation of due process. The judge explained that Burse identified no "lost opportunities" because of the posting.

On appeal Burse maintains that the state violated due process by denying him a hearing before it suspended him. To prevail on this due process claim, Burse must show that the state deprived him of a protected interest and that the procedures it used did not comply with minimum due process requirements. *See Hinkle v. White*, No. 14-2254, 2015 WL 4297887, at *2 (7th Cir. July 16, 2015). The defendants concede that Burse had a protected interest before it suspended him, so all that we must decide is what process Burse was due. A pre-deprivation hearing is not always required; the need for one depends on the balance "between the benefits and costs of such process*." Siebert v. Severino*, 256 F.3d 648, 659 (7th Cir. 2001) (quoting *Penn Cent. Corp. v. U.S. R.R. Vest Corp.*, 955 F.2d 1158, 1163 (7th Cir. 1992)). The three relevant considerations are: (1) the private interest that will be affected, (2) the risk of an erroneous deprivation, and (3) the government interest. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

   Balancing these three considerations, we conclude that Burse had no right to pre-suspension process. Burse has a strong interest in receiving payments for past work and continuing his contractual relationship with the state. But the seven-week suspension limited only Burse's ability to enter into *new* state contracts. The state terminated his existing contracts only after his debarment, which occurred after he was offered a full hearing, the adequacy of which Burse does not challenge. The second and third considerations outweigh Burse's private interest. The government has a substantial interest in protecting taxpayers from fraudulent billing. And the risk of an erroneous suspension was low because the audit, its findings, and the pre-suspension investigation established reasonable grounds to believe Burse had defrauded the state. Those findings obviated the need for a pre-suspension hearing. *See Barry v. Barchi*, 443 U.S. 55, 64–65 (1979) (a pre-deprivation hearing was unnecessary for suspending horse-racing license because the suspension was based on probable cause). Furthermore Burse received immediate notice of the suspension and a prompt opportunity to contest the suspension. These added procedures supplied whatever process he was due.

   Burse also repeats his claim that, by publishing his name on the list of suspended contractors, the state harmed his reputation and thereby violated due process. A defamation claim ground in due process requires some showing that the defamatory statements "alter[ed] or extinguish[ed] a right or status recognized by state law." *Santana v. Cook County Bd. of Review*, 679 F.3d 614, 621 (7th Cir. 2012) (quoting *Brown v. Michigan City Ind.*, 462 F.3d 720, 730 (7th Cir. 2006)). As the district court correctly pointed out, Burse identified no situation in which a prime contractor ended or refused to enter into a contract because of the posting. Any contracts that Burse lost directly with the state resulted from his suspension, not the posting. The district court thus properly granted summary judgment for the defendants in the second case.

                                                                    AFFIRMED.