In the

# United States Court of Appeals
### For the Seventh Circuit

No. 11-2103

VICTOR SANTANA,

*Plaintiff-Appellant*,

*v.*

COOK COUNTY BOARD OF REVIEW, LARRY ROGERS, JR.,
JOSEPH BERRIOS, BRENDAN F. HOULIHAN, SCOTT M.
GUETZOW, JOHN P. SULLIVAN, and
THOMAS A. JACONETTY,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:09-cv-05027—**Milton I. Shadur**, *Judge.*

ARGUED FEBRUARY 23, 2012—DECIDED MAY 9, 2012

Before FLAUM and TINDER, *Circuit Judges,* and SHADID,
*District Judge.**

---

* The Honorable James E. Shadid, District Judge for the
United States District Court for the Central District of Illinois,
sitting by designation.

TINDER, *Circuit Judge*. The Cook County Board of Review has the power to "revise, correct, alter, or modify any [property tax] assessment, as appears to be just." 35 ILCS 200/16-95. Unsurprisingly, the Board's exercise of its considerable power is not free from controversy, some of which has found its way into federal court through this case: Victor Santana, a self-described tax consultant who worked for the Board for ten years, until 2002, alleges that the defendants, elected and appointed Board employees, violated his federally protected rights by (1) "red flagging" his clients' files and by (2) running the Board as a "pay for play" racketeering enterprise that sought to extort campaign donations and consulting work from him. After considering several amended complaints and after examining the materials supporting one of Santana's central allegations—that he was summarily banned from the Board—the district court dismissed Santana's fourth amended complaint for failure to state a claim. We affirm.

Before we can explain our agreement with the district court—why the most recent version of Santana's complaint failed to state a viable 42 U.S.C. § 1983 or civil RICO claim, 18 U.S.C. § 1962(c)—we must take a few pages to discuss the development of this case in order to address Santana's argument that the district court improperly limited discovery on his assertion that he was banned from the Board's offices *completely* and not only from the Board's private offices, as the defendants maintained (correctly, it turns out).

Santana's case did not begin well. The day after he filed his initial complaint the district court struck it for

its obvious failure to comply with Rule 8(a). The district court did not think that it or defense counsel could fairly be required to parse its 19 repetitive and amorphous "counts" spread over 269 paragraphs. Santana's first amended complaint fared somewhat better. It explained that since he stopped working for the Board, Santana had assisted "thousands" of taxpayers with tax-review-related paperwork. Although Santana does not claim to have assisted taxpayers on the Board's premises and although as a non-lawyer he is not permitted to appear before the Board on another taxpayer's behalf, he alleged that his First Amendment, equal protection, and due process rights were violated when the defendants banned him from the Board's premises without reason or notice and announced the ban through "the news media." Santana claimed he was not given a reason for the ban, but he believed that it was a product of his refusal to contribute to Board Commissioners' election campaigns, unlike many others whose work involves the Board.

Santana also alleged in his first amended complaint that defendants Rogers, Guetzow, and Sullivan committed wire fraud by sending letters to unidentified taxpayers stating that they must appear at hearings before the Board when it was only a trick to get them to talk about Santana. He accused those same defendants plus defendant Jaconetty of intimidating taxpayers to appear before the Board, threatening tax increases if they didn't. Finally, Santana alleged that the Board Commissioners had committed bribery by favoring the

lawyers and law firms that donated to their campaigns. Santana believed that those alleged violations of state and federal law together with his injuries stated a civil RICO claim.

Relying on his allegation that he was completely banned from the Board's premises, the district court concluded that Santana had stated § 1983 claims sufficient to survive the defendants' motion to dismiss. *Santana v. Cook Cnty. Bd. of Review*, 700 F. Supp. 2d 1023, 1030 (N.D. Ill. 2010). His RICO claim, however, was dismissed. *Id.* The district court concluded that Santana had not alleged wire fraud with sufficient particularity to satisfy Rule 9(b), that intimidation is not a predicate act for a RICO claim, and that the alleged extortion was only to obtain information about Santana, not property, as required by RICO. *Id.* at 1034 (citing *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 410 (2003)). As for the alleged bribery, the district court concluded that Santana had not said how it harmed him in his business or property and so he did not have standing under RICO § 1964(c). *Id.* at 1035.

Santana amended his RICO claim, asserting this time that the defendants operated the Board as a "pay for play" racketeering enterprise, extorting and conspiring to extort campaign contributions from tax attorneys and consultants in exchange for tax reductions. Because Santana would not pay his consulting business was harmed. And beyond preventing him from getting positive outcomes for his clients, Santana alleged that "the Defendants used their nearly unchecked power, and

the veil of legitimacy granted by public office, to ban the Plaintiff, publically slander him, and make him a political scapegoat—destroying his business, property, reputation, and ability to make a living in Chicago." *Santana v. Cook Cnty. Bd. of Review*, 270 F.RD. 388, 392 (N.D. Ill. 2010) (quoting Santana's memorandum in support of his amended complaint). After this amendment, the district court denied the defendants' motion to dismiss. *Id.* at 390.

The district court's next step was not to set a discovery schedule, as Santana wanted, but instead to review evidence on the scope of Santana's ban, as requested by the defendants. At this point in the development of his case, Santana's claims rested largely (if not completely) on his allegation that he had been banned from the Board's public and private areas. The defendants believed that the transcript of the meeting at which Santana was banned revealed that the ban covered the Board's private offices only, a place non-employees have no right to be. As evidence to the contrary, that he was banned from the private *and public* areas of the Board's offices, Santana offered a Fox News segment that allegedly announced his complete ban.

The district court reviewed the parties' submissions— the meeting transcript and the news clip—and found that "those things show unambiguously that plaintiff Santana's characterization is wrong and the characterization by the defendants is right about the limited scope of the ban. There isn't any question at all they talked about a broader ban and then they abandoned that

notion." Santana was only banned from "the internals of the Board of Review." And "this is just the way in which that [Fox News] commentator, whatever the commentator's source was, characterized the ban. . . ." The district court ordered Santana to amend his complaint accordingly.

Santana argues that the district court's consideration of the meeting transcript and the news segment is reversible error because they are matters outside the pleadings, consideration of matters outside the pleadings converts a motion to dismiss to a motion for summary judgment, and when that happens summary judgment procedures must be followed. But he thinks those procedures were not followed because he was prevented from presenting what he considers pertinent material.

It is true that "consideration of outside matter without converting [a] motion may result in reversible error." *Gen. Elec. Capital v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). It may, but in this case it does not for at least two reasons. First, the transcript and the news segment are not "matters outside the pleadings" within the meaning of Rule 12(d): "these were [both] documents to which the Complaint had referred, . . . the documents were concededly authentic, . . . and they were central to the plaintiffs' claim." *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009) (noting that this court has been "relatively liberal" in interpreting what must be considered "matters outside the pleadings" for the purpose of Rule 12(d) and citing cases). Second, even assuming that the district court did convert the defen-

dants' motion to one seeking partial summary judgment under Rule 56, or even assuming the court acted on its own motion under Rule 56(f), there was no error. The parties had ample notice, time to respond, and the district court considered everything that the parties claimed to be probative of the scope of the ban. And this conclusion is not undermined by the district court's denial of Santana's extensive discovery requests. The district court denied Santana's requests (or, more precisely, put them on hold while considering the scope of the ban) for an excellent reason: Santana's proposed discovery did not concern the scope of the ban—its legal impact or propriety under the Board's procedures, perhaps, but not its scope. That alone—the scope of the ban—was the simple threshold question that the district court wanted answered, was easily answerable by materials referred to in the complaint, and that, once answered, could (and did) dramatically narrow the issues. The district court's action was fair, eminently sensible, and a far cry from reversible error. The opposite—it was good case management.

With the scope of the ban resolved, Santana filed a third amended complaint. But because it still pressed the issue of a "ban from the offices of the Board of Review," the district court stated that its allegations could not be advanced in "objective good faith" and consistent with Rule 11. The district court urged the parties to confer and focus the issues. Santana filed a fourth amended complaint approximately one month later and now appeals its dismissal.

The fourth amended complaint asserts that Fox News ran stories about improper influence on the Board by one of Santana's associates, State Representative Paul Froehlich. Because of Santana's relationship with Froehlich, and because of Santana's history with the Board, the defendants allegedly decided to scapegoat Santana as the source of the Board's problems. To accomplish that, the defendants resolved and then announced through interviews on Fox News that they would "red flag" tax appeals from Santana's clients, resulting in tax increases for them. Santana further alleged that the defendants ran the Board as a "pay for play" system rife with bribery and extortion, where contributing parties got consistently better results than non-contributing ones. (The fourth amended complaint makes no reference to a ban.)

Based on these facts, as elaborated in his complaint, Santana asserted a civil RICO claim and § 1983 claims for violations of his Fourteenth Amendment rights to procedural due process and to equal protection and his First Amendment rights to free association and to petition the government. The district court dismissed Santana's complaint for failure to state a claim. Santana appeals. We review a dismissal for failure to state a claim de novo. *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011). And that is how we review all of Santana's claims except his equal protection class-of-one claim and his First Amendment right-to-petition claim. Santana's appellate brief mentions equal protection in its statement of issues but not otherwise. His right-to-

petition claim is not mentioned at all. Arguments Santana may have made to the district court are insufficient to present these claims on appeal and they are now waived. *See, e.g., Logan v. Wilkins*, 644 F.3d 577, 583 (7th Cir. 2011); *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 641 (7th Cir. 2008). In reviewing the dismissal of Santana's other claims, we accept well-pleaded facts in the complaint as true and consider whether those allegations state a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To do so, Santana must plead "factual content that allows the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

We consider first Santana's procedural due process claim. As a necessary component of a procedural due process claim, Santana must identify a protected property or liberty interest. *Kahn v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010), *cert. denied,* 132 S. Ct. 754 (2011). Santana asserts both. He claims a protected property interest in his private employment assisting taxpayers prepare submissions to the Board. To have a property interest protected by the Fourteenth Amendment, however, Santana must have "more than a unilateral expectation of [the claimed interest]. He must, instead, have a legitimate claim of entitlement to it." *Id.* (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). An entitlement

of that magnitude arises when "statutes[,] regulations [or a contract] . . . establish a framework of factual conditions delimiting entitlements which are capable of being explored at a due process hearing." *Id.* (quoting *Fincher v. South Bend Heritage Found.*, 606 F.3d 331, 334 (7th Cir. 2010)). Santana has not alleged anything of the sort. He does not point to any statute, regulation, or contract that suggests his work as a consultant for private clients might be a constitutionally protected property interest and so that part of his claim ends here.

For his procedural due process claim based on a deprivation of a protected liberty interest, Santana alleges that defamation by the defendants has deprived him of his reputation and his ability to work as a consultant and that he has therefore stated a claim on a "stigma plus" theory. *See Brown v. Michigan City Ind.*, 462 F.3d 720, 730 (7th Cir. 2006). As the name implies, Santana must allege more than just defamation or stigmatic-harm, he must also state a "plus": He must allege that the defendants' defamatory statements "alter or extinguish a right or status previously recognized by state law." *Id*. For the sake of argument, we assume that the Board defamed Santana by planting stories with Fox News about his corruption and the measures the Board had to take to deal with it. But what is the "plus"? What "right or status previously recognized by state law" does the (assumed) defamation "alter or extinguish"? Santana, of course, answers by pointing to his ability to work as a tax consultant. Defamation by the government, however, "does not deprive a person of a

liberty interest protected by the Fourteenth Amendment, *even when it causes serious impairment of one's future employment.*" *Kahn*, 630 F.3d at 534 (quoting *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 548 (7th Cir. 2002)) (emphasis added). And Santana has plausibly alleged much less than that. He claims constitutional injury because of publicity about the forms he works on being "red flagged." But we share the district court's inability to see how the Board could possibly know which forms Santana has worked on, and his bald and vaguely ominous assertion at argument that the Board has a "system of coding" failed to enlighten us. *See Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 392 (7th Cir. 2010) (argument not developed on appeal is waived). Santana is not an attorney and so cannot appear before the Board to represent clients and the tax forms he helps with do not request or require a consultant to identify himself. Completed forms can be submitted by mail or dropped at the Board's front desk. Santana has not told us in his complaint, in his brief, or at argument how he cannot work for his clients anonymously, and not by doing anything extraordinary or clandestine but just by working for his clients as a consultant on property-tax matters usually would. In short, the Board's announcement that it would apply additional scrutiny to Santana's clients' submissions—what Santana calls red flagging—was, for all we can tell, an empty gesture. And an empty gesture is not enough to cause something worse than "serious impairment" to his future employment as required to state a stigma-plus claim. *Kahn*, 630 F.3d at 534.

Moreover, Santana has not plausibly alleged that having the forms he worked on (or the ones that the Board could figure out that he worked on) "red flagged" has resulted or will result in improper treatment by the Board. He asserts that tax increases have been given where in the past there were reductions. But so what? Santana's position cannot be that all his clients (no matter who, no matter when) are entitled to reductions or that once his clients have received a reduction they are entitled to additional reductions in the future and are immune from increases. Santana has no constitutional right to have his clients' applications rubber-stamped. Santana's procedural due process claim was properly dismissed.

In his attempt to state a First Amendment claim, Santana alleges that the Board has retaliated against him for his association with Representative Froehlich and for his refusal to donate to the Board Commissioners' election campaigns. To state a First Amendment retaliation claim, Santana must plausibly allege that (1) he engaged in activity protected by the First Amendment, (2) he suffered an adverse action that would likely deter future First Amendment activity, and (3) the First Amendment activity was "at least a motivating factor" in the defendants' decision to retaliate. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)); *see also Greene v. Doruff*, 660 F.3d 975, 979-80 (7th Cir. 2011) (explaining the "motivating factor" causal requirement). We will assume that Santana's association with Representative Froehlich is protected and that he has there-

fore satisfied the first requirement. We agree with the district court, however, that Santana has not satisfied the second requirement. Recall, the ban is no longer part of the complaint. The question now is only whether the defendants have engaged in "adverse conduct" sufficient to deter future First Amendment activity by red flagging his submissions for special review and telling Fox News that they would. As we already noted, we have not been told how forms that Santana worked on *could* be singled out. And, again, even if we get past that, Santana has not explained how any heightened scrutiny of his submissions has resulted in unusually poor (as opposed to normal win-some, lose-some) outcomes for his clients.

Santana emphasizes that an adverse action that may not be independently actionable will be actionable under § 1983 if it is done as retaliation for engaging in protected First Amendment activity. *Bridges*, 557 F.3d at 552 (citing cases). That accurate statement of law, however, does not eliminate the requirement that to state a claim the alleged adverse action—independently tortious or not—must be sufficient to deter an ordinary person from engaging in that First Amendment activity in the future. *See Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011); *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009). Consistent with our discussion of Santana's due process claim, we do not think that Santana's allegations about the defendants "red flagging" his clients' submissions to the Board and telling Fox News that they would are sufficient to deter an ordinary person from exercising his right to associate with and to donate or not donate to

particular politicians. After all, an ordinary person will not be deterred by a threat that his clients' filings will receive special scrutiny if there is no way to know which filings are his. Santana's First Amendment claims were therefore properly dismissed.

Finally, Santana alleges that the defendants' alleged racketeering activity—including bribery, money laundering, honest-services fraud, and extortion—injured him "in business or property" and therefore violated RICO, 18 U.S.C. § 1964(c). But Santana cannot state a RICO claim for much the same reason that he cannot state a § 1983 claim: He has not plausibly alleged how he could have been injured in his business or property by the defendants' conduct. We have already explained why the defendants' alleged segregation and scrutiny of Santana's clients' submissions, and the defendants' announcement that they would do so in interviews on Fox News, do not constitute an injury to his business or property. For all Santana has alleged, his work as a consultant should be undisturbed. And so while the defendants' statements to Fox News may amount to defamation under Illinois law (although we reach no conclusion about that), that does not advance his claim under § 1964(c); his alleged reputational injury is *personal*, and that is true even if it could result in a loss of income. *See Evans v. City of Chicago*, 434 F.3d 916, 927 (7th Cir. 2006). If the defendants had the power to interfere directly with Santana's promised or contracted-for work as consultant and then tried to do so, Santana may have been able to allege an injury that meets the § 1964(c) "business or property" requirement. *Id.* at 928.

But (again) that is not this case. Santana has not alleged in his complaint—or explained in any other statement to this court—how his work is not entirely anonymous (from the defendants' perspective), independent, and private and thus beyond the defendants' reach, no matter what their purpose.

Santana's allegation that Joseph Berrios attempted to extract free consulting services from him adds nothing. Consider, how would that extortion go? What leverage could Berrios have over Santana's business or property? To penalize Santana for disobedience, Berrios would need to identify Santana's clients. And as we have now said too many times, Santana has failed to allege how that is possible.

Santana has tried to state a claim against these defendants in five different complaints. We agree with the district court that there should be no "hydra-like effort by [Santana's] counsel to grow still another head through a [sixth] complaint. Enough is enough."

AFFIRMED.