Eric N. SODERLUND, Plaintiff-Appellant,†

v.

David B. ZIBOLSKI, Defendant-Respondent.

Court of Appeals

*No. 2014AP2479. Submitted on briefs June 16, 2015.*
*—Decided December 8, 2015.*

2016 WI App 6

(Also reported in 874 N.W.2d 561.)

† Petition for Review Filed.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jeff Scott Olson* of *The Jeff Scott Olson Law Firm, S.C.,* Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Brad D. Schimel,* attorney general, and *Thomas C. Bellavia,* assistant attorney general.

Before Stark, P.J., Hruz, J., and Thomas Cane, Reserve Judge.

¶ 1. CANE, J. Eric Soderlund appeals an order granting David Zibolski's motion for judgment on the

pleadings and dismissing Soderlund's claims. Soder-lund argues the circuit court erroneously determined he failed to state a retaliation claim under 42 U.S.C. § 1983 (2012) for violation of his First Amendment rights. We hold: (1) Soderlund failed to plead a claim against Zibolski in his official capacity; (2) based on our adoption of the federal incorporation-by-reference doc-trine, the circuit court properly considered a document referenced in the complaint without transforming Zibolski's motion into one for summary judgment; and (3) Soderlund's speech was not protected by the First Amendment, because he spoke on a matter of personal concern, rather than public concern, and because he spoke in his capacity as a public employee, rather than as a citizen. Accordingly, we affirm.

## BACKGROUND

¶ 2. Prior to his resignation on February 28, 2012, Soderlund was employed by the Wisconsin Department of Justice (DOJ) for nineteen years as a forensic scientist in the state crime lab in Wausau. This case stems from a dispute between Soderlund and DOJ that began in 2006.

¶ 3. Soderlund failed a footwear identification proficiency test. On August 4, 2006, he initiated an internal complaint with DOJ, asserting his failure was caused by unwarranted deviation from DOJ quality assurance standards for footwear identification. On February 5, 2007, Soderlund's supervisor sent a re-sponse indicating that no action had been taken yet on his complaint because of a change in administration.

¶ 4. On April 28, 2008, Soderlund submitted to the Laboratory Accreditation Board of the American Society of Crime Laboratory Directors (accreditation

board) a request for an investigation of the state crime labs, alleging DOJ was failing to adhere to its quality assurance standards regarding proficiency tests and, in particular, footwear analysis. Soderlund indicated that his concerns had been discussed in his performance evaluations over the previous several years. Soderlund provided a copy of the investigation request to his supervisor.

¶ 5. On April 29, the administrator of the state crime labs emailed the crime labs' quality assurance coordinator, who was responsible for administering proficiency tests. The email, which was copied to Soderlund, indicated too much time had been consumed by the proficiency test issues Soderlund raised and suggested no more time be spent on the matter.

¶ 6. On September 9, 2008, the accreditation board sent Soderlund a letter indicating that the issues he raised did not fall within the board's purview and were matters between Soderlund and his employer. On September 16, Soderlund filed a complaint with the accreditation board, contending the board was responsible for investigating Soderlund's allegations and for ensuring that DOJ was following its own quality system requirements and procedures. The board responded in November that it would investigate the complaint.

¶ 7. On April 29, 2009, Soderlund sent the crime labs' quality assurance coordinator a request for a "Quality Action" pursuant to DOJ procedures. Soderlund's request alleged unauthorized deviation from policies for footwear identification and inappropriate delay by DOJ in considering the complaint he had filed on August 4, 2006, "to address the Administration's determination that [he] failed CTS Impression/Imprint (footwear) Test No. 04–533."

¶ 8. On May 15, 2009, the crime labs' administrator wrote Soderlund, indicating Soderlund had wasted an extraordinary amount of DOJ personnel time addressing a dispute over the interpretation of DOJ quality assurance standards for footwear identification. The administrator ordered Soderlund to stop writing to DOJ personnel regarding his past performance on any proficiency test and indicated DOJ personnel would no longer respond regarding the issue.

¶ 9. On July 17, 2009, the accreditation board sent Soderlund a response to his September 16, 2008 complaint regarding DOJ's alleged failure to adhere to its own quality assurance standards. The board concluded that Soderlund's allegations did not have merit and that DOJ followed its lab policies and procedures and adhered to the board's accreditation requirements. The board indicated its investigation was closed.

¶ 10. Sometime after receiving the accreditation board's response, Soderlund sent to the Inter American Accreditation Corporation (IAAC) copies of the investigation requests he had previously submitted to the accreditation board, together with the board's responses. On January 19, 2010, the IAAC sent Soderlund a letter indicating his allegations had no relation to the performance of the accreditation board as an accrediting body and, thus, did not constitute a complaint against the board as an IAAC member.

¶ 11. Sometime during 2010, Soderlund initiated an administrative proceeding under Wisconsin's state employee whistleblower protection law before the Equal Rights Division of the Department of Workforce Development. On December 22, 2010, the Equal Rights Division dismissed Soderlund's administrative proceeding for failure to state a claim.

¶ 12. In January 2011, a new crime labs administrator was appointed. On February 21, Soderlund sent an investigation request to the new administrator, objecting to DOJ's handling of the two prior internal complaints he had filed in August 2006 and April 2009. Soderlund's request also alleged DOJ was not following its quality assurance standards for verification of fingerprints and had withheld information from the accreditation board. Soderlund additionally alleged "years of unfair treatment" by DOJ "unfairly questioning" his competence as a footwear examiner and "other unfair criticisms of his work." On March 1, 2011, the administrator responded that previous grievance procedures were followed and that the administrator considered the matter closed and did not anticipate any further action.

¶ 13. On August 17, 2011, Soderlund wrote back to the administrator and stated his previous grievance procedures had been derailed because DOJ had threatened him with discipline if he continued to pursue the matter. Soderlund requested an investigation of his allegations that DOJ was not adhering to quality assurance standards, with particular reference to his failure of footwear proficiency tests. On January 4, 2012, the administrator responded that Soderlund's issues had been concluded under a prior DOJ administration and that no further action was warranted. The administrator expressed an expectation that Soderlund would direct his energies to his work assignments and the future.

¶ 14. On February 13, 2012, Soderlund sent a letter to four accreditation board assessors who were scheduled to assess the Wausau crime lab in March 2012. The letter reiterated Soderlund's allegations that DOJ had not adhered to quality assurance stan-

dards and referred to the board's July 17, 2009 letter to Soderlund. Soderlund also sent copies of his letter to two state legislators.

¶ 15. On February 21, 2012, Zibolski—the deputy director of DOJ's Division of Law Enforcement Services—sent Soderlund a letter directing him to attend an investigatory meeting regarding possible violations of DOJ work rules. Soderlund appeared before Zibolski at the hearing and explained he believed he was ethically bound to raise the concerns presented in his February 13 letter. On February 27, Zibolski sent Soderlund a predisciplinary hearing letter, which indicated Soderlund had committed fifty-four violations of six DOJ work rules. The letter further indicated the March 2 hearing would permit Soderlund "an opportunity to provide new information and/or mitigating circumstances before" DOJ determined the appropriate discipline.

¶ 16. On February 28, 2012, believing he was about to be terminated and wishing to avoid the possibility of losing retirement benefits, Soderlund decided to retire and selected one of several resignation dates proposed by his supervisor. Soderlund attempted to rescind his resignation the following day, but his request was denied.

¶ 17. In August 2012, Soderlund, pro se, attempted to commence a lawsuit against Zibolski by submitting certain documents to the Marathon County Circuit Court, including Soderlund's February 13, 2012 letter, and Zibolski's February 27, 2012 letter. Since no case was properly commenced, Soderlund's documents were simply retained in a file. Soderlund, then represented by counsel, commenced the present action in December 2012. Zibolski subsequently moved for judgment on the pleadings. He

argued: (1) Soderlund did not suffer any adverse action that would deter a person of ordinary firmness from engaging in free speech; (2) Zibolski was entitled to qualified immunity from all individual-capacity claims against him; and (3) Soderlund had failed to state an official-capacity claim against Zibolski.

¶ 18. The circuit court issued a partial decision, holding that Soderlund failed to state an official-capacity claim against Zibolski. However, it ordered supplemental briefing on two issues: whether any of Zibolski's conduct constituted an actionable threat of punishment for future speech; and whether Soderlund's speech was protected by the First Amendment under *Garcetti v. Ceballos*, 547 U.S. 410, 418–21 (2006). The parties filed their supplemental briefs in July 2014. Zibolski's supplemental brief discussed the contents of Soderlund's February 13, 2012 letter and Zibolski's February 27, 2012 letter, but did not include copies, noting they had already been filed with the court in August 2012.

¶ 19. The court entered a final order granting judgment on the pleadings and dismissing Soderlund's claims in their entirety. It held: (1) Soderlund's speech was not protected by the First Amendment; (2) Soderlund did not suffer any adverse action that would deter a person of ordinary firmness from engaging in protected speech; and (3) Zibolski was entitled to qualified immunity from all individual-capacity claims against him because there was no preexisting law clearly establishing that his conduct was unlawful.

¶ 20. In determining that Soderlund's speech was not protected by the First Amendment, the court relied on Soderlund's February 13, 2012 letter. The court noted it had reviewed the copy that Soderlund

had submitted pro se, and it attached the nineteen-page letter as an appendix to the decision. Soderlund now appeals.

## DISCUSSION

¶ 21. Soderlund argues, on multiple grounds, that the circuit court erroneously granted judgment on the pleadings dismissing his claims against Zibolski. An order granting judgment on the pleadings presents a question of law that is reviewed de novo. *Freedom From Religion Found., Inc. v. Thompson*, 164 Wis. 2d 736, 741, 476 N.W.2d 318 (Ct. App. 1991). Our review requires that we examine the complaint to determine whether a claim has been stated. *Id.* In doing so, " 'the facts pleaded by the plaintiff, and all reasonable inferences therefrom, are accepted as true.' " *Id.* (quoting *Prah v. Maretti*, 108 Wis. 2d 223, 229, 321 N.W.2d 182 (1982)). However, a reviewing court "cannot add facts in the process of liberally construing the complaint[;]" it is the sufficiency of the facts alleged that controls whether a claim is properly pled. *Doe v. Archdiocese of Milwaukee*, 2005 WI 123, ¶ 19, 284 Wis. 2d 307, 700 N.W.2d 180. We address Soderlund's various arguments in turn.

*Whether a claim was pled against Zibolski in his official capacity*

¶ 22. Soderlund first argues the court erroneously dismissed his official-capacity claim against Zibolski. Soderlund's complaint[1] was directed against

---

[1] All references to the complaint are to Soderlund's First Amended Complaint.

Zibolski in both his individual and official capacities. It requested compensatory and punitive damages, but no prospective relief. However, the complaint contained a catchall prayer of relief, seeking "such other and further relief as the court deems just."

¶ 23.　As Soderlund acknowledges, a claim for damages against state officials in their official capacity cannot be brought under 42 U.S.C. § 1983, because such actions are viewed as one against the state and, therefore, the officials are not considered "persons" under that statute.[2] *See Burkes v. Klauser*, 185 Wis. 2d 308, 352, 517 N.W.2d 503 (1994) (granting summary judgment dismissing "the plaintiff's claim for damages against the defendants in their official capacity.") (citing *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989)). Therefore, the circuit court properly dismissed the claim for damages against Zibolski in his official capacity.

¶ 24.　However, a plaintiff can "secure prospective, equitable relief from state officials in their official capacities." *Id.* "A state official sued for injunctive relief in his or her official capacity is a person under sec. 1983 and thus subject to suit, because 'official-capacity actions for prospective relief are not treated as actions against the State.' " *Id.* at 352–53 (quoting *Will*, 491 U.S. at 71, n.10).

---

[2] 42 U.S.C. § 1983 (2012) provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding or redress.

¶ 25. Citing *Burkes*, the circuit court held that Soderlund's failure to demand any prospective relief in his complaint, such as reinstatement, precluded Soderlund from suing Zibolski in his official capacity. We agree under the unique circumstances presented here, where the type of relief demanded is essential to the claim.

¶ 26. Soderlund first suggests in his principal brief that his complaint should be deemed amended to conform to the evidence supporting a prospective claim for reinstatement.[3] That doctrine, however, only applies where evidence related to the issue has been presented at trial. Under Wis. Stat. § 802.09(2),[4] "[i]f issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Here, there was never any trial at which Zibolski could have given such consent.

¶ 27. At the pleading stage, the applicable statute is Wis. Stat. § 802.02(1), which states:

A pleading or supplemental pleading that sets forth a claim for relief . . . shall contain all of the following:

(a) A short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief.

(b) A demand for judgment for the relief the pleader seeks.

---

[3] Soderlund subsequently asserts in his reply brief that he is not making such an argument.

[4] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

During the circuit court proceedings, Soderlund could have moved, pursuant to Wis. Stat. § 802.09(1), for leave to amend his complaint to add a claim seeking reinstatement or other prospective relief, but he chose not to do so. Accordingly, we reject any argument that Soderlund's complaint could have been deemed amended following trial.

¶ 28. Alternatively, Soderlund argues his complaint was adequate to survive a motion to dismiss because any proper remedy is available at trial, regardless whether it was specifically pled, citing *John v. John*, 153 Wis. 2d 343, 450 N.W.2d 795 (Ct. App. 1989). That case stated, as a general matter, that a prayer for relief is not a substantive part of the complaint, and held that no amendment of the pleadings was necessary where the facts alleged gave adequate notice of the claim and the posttrial change merely "consisted of an additional form of relief." *Id.* at 367. The court further explained, "We view this as a modification of the *ad damnum* clause to grant relief not demanded in the complaint but substantiated by uncontroverted proof." *Id.* at 368. *John* is distinguishable in that it involved a case decided at trial; the relief requested here is a substantive part of the complaint because it controls whether the defendant is subject to suit in the first instance; and once the disallowed official-capacity claim for damages here is excised from the complaint, there is no remedy identified whatsoever.

¶ 29. For the first time in his reply brief, Soderlund discusses additional cases, and then in a submission of supplemental case authority, mentions Wis. Stat. § 806.01(1)(c), which provides: "Every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded the relief in the pleadings." As this

statute deals with a final judgment granting relief, we do not find it particularly relevant to determining whether a claim was adequately pled in the first instance to survive a pretrial motion. Further, the additional cases cited add nothing to the general holding in *John*.[5]

¶ 30. In contrast, existing case law indicates that, where as a matter of law a defendant is not subject to a suit seeking certain types of remedies, a failure to demand any available type of remedy constitutes a failure to state a claim. In *Brown v. State*, 230 Wis. 2d 355, 357–58, 602 N.W.2d 79 (Ct. App. 1999), a lottery winner sued the State of Wisconsin for breach of contract. Brown asserted the winnings should be paid in twenty-five monthly—rather than yearly—installments, and demanded either specific performance or damages as determined by a present-value methodology. *Id.* at 359–60. Due to sovereign immunity, the State could not be sued for specific performance. *Id.* at 371. The circuit court granted the State's motion to dismiss the entire breach-of-contract claim because it determined the demand for damages was, in essence, another form of specific performance since it requested the entire amount due under the contract. *Id.* at 371–72.

¶ 31. On appeal, we determined the circuit court erred; not because some type of unpled relief might conceivably be available at trial, but because Brown had, in fact, demanded money damages. We explained:

---

[5] Moreover, to the extent Soderlund contends the cases cited in his reply brief stand for a proposition beyond that presented in his initial brief, we reject the contention as tardy. *See Swartwout v. Bilsie*, 100 Wis. 2d 342, 346 n.2, 302 N.W.2d 508 (Ct. App. 1981) (We generally do not address matters first raised in a reply brief.).

> The fact that the amount of damages Brown requested was more than the amount of installments due but unpaid on the date she filed the complaint and on the date the court entered its decision, is not a ground for dismissal of the breach of contract claim on sovereign immunity grounds: *it does not go to the type of claim or the type of remedy,* but only to the amount of damages.

*Id.* (emphasis added). Accordingly, we held the circuit court "erred in dismissing the claim for breach of contract insofar as the complaint seeks damages for the breach." *Id.* at 373.

¶ 32. Had it been unnecessary for the plaintiff in *Brown* to specifically plead a request for a type of available relief, the court's analysis would have been unnecessary. Thus, we read *Brown* to require that where as a matter of law a defendant is not subject to a suit seeking certain types of remedies, a failure to specifically demand *any* available type of remedy constitutes a failure to state a claim. Consequently, because Soderlund's complaint specifically requested only monetary damages, we conclude the circuit court properly dismissed his official capacity claim.

¶ 33. Furthermore, even assuming, arguendo, Soderlund's catch-all prayer for relief was otherwise sufficient to proceed to trial, he was still required to do more to survive Zibolski's motion asserting failure to state a claim. In his motion for judgment on the pleadings, Zibolski argued the official capacity claim failed because, pursuant to *Burkes,* he was not a "person" subject to suit. Soderlund simply responded that he "seeks only prospective injunctive relief, *i.e.,* a reinstatement order against [Zibolski] in his official capacity." He then footnoted that statement in his pretrial brief as follows: "This was not made explicit in the First Amended Complaint, but the prayer for

relief does include a request for "such other and further relief as may be just." Soderlund then cited several federal cases, including *Will*, 491 U.S. 58, for the bald proposition that prospective injunctive relief is available for § 1983 official capacity claims. Soderlund did not, however, identify what was necessary to state such a claim, assert he had stated such a claim, or explain what facts in his complaint could support such a claim.

¶ 34. In particular, in *Burkes*, 185 Wis. 2d at 352–56, immediately after dismissing the official capacity claim for damages, our supreme court identified the requirements for pleading an injunctive relief claim, and ultimately determined the plaintiff had failed to state such a claim. To obtain injunctive relief, a plaintiff must establish that the state official was "acting pursuant to state policy or custom." *Id.* at 353. An official acts pursuant to state policy or custom under one of two circumstances. *Id.* "The act must be either pursuant to 'a policy statement, ordinance, regulation, or decision adopted and promulgated by that body's officers' or must be performed by an official who has 'final policymaking authority.' " *Id.* (citations omitted).

¶ 35. Here, Soderlund's complaint makes no such factual allegations, and Soderlund has never—either in the circuit court or on appeal—claimed that it does or that any asserted facts would support such a claim. Under the circumstances here, where there was a mere catch-all prayer for relief and no facts alleged to support the alternative remedy, the circuit court properly dismissed the official capacity claim.

*Whether the court properly relied on a document referenced by the complaint*

¶ 36. Soderlund argues the circuit court improperly considered his February 13, 2012 letter to the accreditation board because, although it had been filed prior to commencement of the present case and his complaint referred to and quoted from it, the letter was not attached to the complaint. He contends the court was required to convert Zibolski's motion into a summary judgment motion if the court was going to consider the letter, citing WIS. STAT. § 802.06(2)(b) and (3), both of which provide:

> If . . . matters outside of the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in s. 802.08, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by s. 802.08.

Soderlund asserts the court's consideration of the letter improperly deprived him of the opportunity to respond to the document and submit further evidence.

¶ 37. We adopt the incorporation-by-reference doctrine and reject Soderlund's argument. The WIS. STAT. § 802.06(2)(b) and (3) conversion-to-summary-judgment requirement is patterned on Fed. R. Civ. P. 12(d). *See Alliance Laundry Sys. LLC v. Stroh Die Casting Co.*, 2008 WI App 180, ¶ 14, 315 Wis. 2d 143, 763 N.W.2d 167. The Seventh Circuit has recognized an exception to the Rule 12(d) requirement in the incorporation-by-reference doctrine.[6] Under that ex-

---

[6] Courts in jurisdictions other than the Seventh Circuit have likewise adopted the incorporation-by-reference doctrine.

ception, a court may consider a document attached to a motion to dismiss or for judgment on the pleadings without converting the motion into one for summary judgment, if the document was referred to in the plaintiff's complaint, is central to his or her claim, and its authenticity has not been disputed. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *Santana v. Cook Cty. Bd. of Review*, 679 F.3d 614, 619 (7th Cir. 2012).

¶ 38. A document that is considered to be incorporated by reference into the complaint is thus not outside the pleadings. *See Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998). The incorporation-by-reference doctrine "prevents a plaintiff from 'evad[ing] dismissal . . . simply by failing to attach to his complaint a document that prove[s] his claim has no merit.' " *Brownmark Films*, 682 F.3d at 690 (quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)).

¶ 39. Soderlund does not dispute that the three prerequisites for applying the incorporation-by-reference doctrine are satisfied here. That is, he does not dispute that the letter was referenced in his complaint, is central to his claim, and is authentic.[7] Nonetheless, he argues the doctrine cannot apply because the letter was not actually attached to Zibolski's mo-

*See, e.g., Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1996 (3d Cir. 1993); *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n.3 (1st Cir. 1991); *see also* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1327, at 438–42 n.7 (3d ed. 2004 & Supp. 2014).

[7] While Soderlund did not dispute the letter's centrality to his claim, we observe the letter was clearly central, as it collected his allegations of DOJ violations, was referenced

tion. We reject this argument as it is a distinction without a difference. The letter had already been submitted to the court by Soderlund, Zibolski's supplemental brief in support of his motion discussed the letter's content, and that brief indicated the document had already been filed on a specific date. Thus, Soderlund had notice that Zibolski desired that the court consider the letter, just as if Zibolski had submitted another copy.[8] Under these circumstances, Soderlund cannot plausibly contend he lacked notice of his letter's content or Zibolski's desire that the court consider it.[9]

*Whether Soderlund's speech was protected by the First Amendment*

¶ 40. Soderlund's central claim is that Zibolski violated his First Amendment rights by initiating a

extensively in the civil complaint, and was the ultimate speech precipitating DOJ's commencement of the disciplinary proceedings eight days later.

[8] Zibolski filed his supplemental brief in July 2014. Soderlund raised no objection to consideration of the letter prior to the circuit court's September 2014 decision.

[9] Moreover, while WIS. STAT. § 802.06(2)(b) and (3) require that the nonmoving party be given a reasonable opportunity to present any additional pertinent materials, Soderlund has not identified what additional material he would have produced had the desired notice been provided. Rather, the following is the extent of his argument: "With notice, the Plaintiff could have chosen any one of a number of possible courses to address the letter's text in its entirety, from simply attending to it in his briefs, to seeking to amend the complaint, to introducing evidence rendered significant by the court's action." That insufficiently developed argument does not merit further discussion. *See State v. Flynn*, 190 Wis. 2d 31, 39 n.2, 527 N.W.2d 343 (Ct. App. 1994).

disciplinary proceeding against him in retaliation for his communications regarding his performance reviews for footwear and fingerprint identifications and the standards that applied to such work. To state a claim for First Amendment retaliation under 42 U.S.C. § 1983, Soderlund must allege (1) he engaged in activity protected by the First Amendment, (2) he suffered an adverse action that would likely deter future First Amendment activity, and (3) the First Amendment activity was at least a motivating factor in the defendant's decision to retaliate. *See Santana*, 679 F.3d at 622.

¶ 41. In *Connick v. Myers*, 461 U.S. 138, 147 (1983), however, the Supreme Court added a threshold requirement by holding that the First Amendment protects speech by government employees when they speak "as a citizen upon matters of public concern," but not when they speak "as an employee upon matters only of personal interest." Under *Connick*, if the subject matter of a public employee's speech cannot fairly be characterized as being of public concern, it is unnecessary for a court to proceed to balance the employee's free speech interests against the government's interests. *See id.* at 148. This restriction reflects "the common sense realization that government offices could not function if every employment decision became a constitutional matter." *Id.* at 143. "[T]he First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." *Id.* at 149.

¶ 42. While *Connick* focused on the subject matter of a public employee's speech, *Garcetti* added another threshold requirement, which examines the capacity in which the employee speaks. The Court held that "when public employees make statements pursu-

ant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. *Garcetti* thus requires that "before asking whether the subject-matter of particular speech is a topic of public concern, the court must decide whether the plaintiff was speaking 'as a citizen' or as part of [his or] her public job." *Mills v. City of Evansville*, 452 F.3d 646, 647 (7th Cir. 2006); *see also Chaklos v. Stevens*, 560 F.3d 705, 711–12 (7th Cir. 2009) ("*Garcetti* requires a threshold determination regarding whether the public employee spoke in his [or her] capacity as a private citizen or as an employee.").

■

¶ 43. Here, the circuit court concluded Soderlund's speech was unprotected because he spoke as a public employee on a matter of personal concern, rather than as a citizen on a matter of public concern. Soderlund complains that in reaching its conclusion, the court relied on *Garcetti* but did not expressly distinguish between the *Garcetti* capacity analysis and the *Connick* subject-matter analysis. Any such deficiency is irrelevant given our de novo review. We conclude Soderlund fails to meet both thresholds. He spoke in the capacity of a public employee, rather than as a citizen, and he spoke about matters related to a personal employment dispute, rather than about matters of public concern.

¶ 44. Soderlund attempts to cast his speech as a whistle-blowing exposure of unethical behavior within DOJ. However, having reviewed the complaint in the light most favorable to Soderlund, it is apparent that his speech concerned his personal employment grievances. Virtually every statement alleged in the complaint

concerned his failure of footwear identification proficiency tests as a DOJ employee. In other statements, Soderlund complained of his employer's expectations —expressed during employee evaluations—regarding his performance on latent fingerprint analyses.

¶ 45. As Soderlund emphasizes, his complaint did, in paragraphs 412 and 433, assert a waste of public funds and failure to adhere to lab accreditation criteria. However, those assertions were merely based on his performance grievances, and, further, Soderlund does not allege he ever raised any waste-of-funds concern prior to the lawsuit itself. Throughout the statements alleged in the complaint, Soderlund spoke in the voice of an aggrieved employee, rather than that of a concerned citizen. Even in his (incorporated-by-reference) February 13, 2012 letter to the accreditation board assessors that was copied to two legislators, when he went outside the DOJ supervisory structure, he expressly identified himself as a forensic scientist with DOJ's Wausau crime lab. Tellingly, Soderlund commenced his nineteen-page letter as follows:

> As a certified footwear examiner for over 4 years and a certified fingerprint examiner for over 26 years with the International Association for Identification (IAI), I would appreciate your assistance in resolving issues addressed in this document that are long overdue and have unfairly demeaned my reputation as an identification unit analyst.

Soderlund concluded his letter stating, "Based on the information that I have provided in this document, the Administration, ASCLD/LAB, and the IAAC have not followed the 'process' to resolve the footwear proficiency tests and the latent print verification issue."

¶ 46. Soderlund's various communications merely concerned a longstanding disagreement with his employer over interpretation of the rules and standards governing his work as a forensic scientist in the state crime lab. As the Supreme Court noted in *Garcetti*, constitutional protection for contributions to civic discourse "does not invest [public employees] with a right to perform their jobs however they see fit." *Garcetti*, 547 U.S. at 422. Soderlund's communications were all made in his capacity as an employee and concerned matters of personal interest. Accordingly, we conclude Soderlund's 42 U.S.C. § 1983 retaliation claim is foreclosed by both *Garcetti* and *Connick*.[10]

*By the Court.*—Order affirmed.

---

[10] Because we have concluded Soderlund's retaliation claim was properly dismissed for failing to meet the threshold requirements, we need not also address his arguments concerning whether the disciplinary proceedings were sufficiently adverse to be actionable or whether Zibolski was entitled to qualified immunity. *See State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) (appellate courts not required to address every issue raised when one issue is dispositive). In any event, the first step of the qualified immunity test is that the alleged facts show a violation of a constitutional right. Soderlund failed to make that initial showing. "If it is clear that there has been no constitutional injury, we need not proceed to the second step: the officials are entitled to immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).