COURT OF APPEALS
DECISION
DATED AND FILED

March 3, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP347**

Cir. Ct. No. **2012CV795**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

BANK OF NEW YORK MELLON F/K/A BANK OF NEW YORK,

 PLAINTIFF-RESPONDENT,

V.

GLORIA J. BRONSON AND SCOTT E. BRONSON, SR.,

 DEFENDANTS-APPELLANTS,

DANE COUNTY CREDIT UNION,

 DEFENDANT.

  APPEAL from an order of the circuit court for Dane County: JOHN D. HYLAND, Judge. *Affirmed*.

  Before Kloppenburg, Fitzpatrick, and Nashold, JJ.

  **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Gloria Bronson and Scott Bronson appeal an order dismissing their counterclaims against plaintiff Bank of New York Mellon in this mortgage foreclosure case.  We affirm.

¶2      The case was commenced in 2012 by plaintiff Bank of New York Mellon.  The Bronsons are the defendant borrowers.  This case was previously before us on appeal.  *Bank of New York Mellon v. Bronson*, No. 2017AP2301, unpublished slip op. (WI App Aug. 2, 2018).  Since that appeal, the circuit court granted the Bank a foreclosure judgment and dismissed the Bronsons' counterclaims.  The Bronsons appeal as to dismissal of their counterclaims.

¶3      We first address the fourth counterclaim, as contained in the Bronsons' answer filed in April 2012.  This counterclaim alleged that in early 2010 the Bronsons had a contract with their loan servicer under which the Bronsons would make three loan payments, in exchange for which the servicer would modify their loan; that the Bronsons fulfilled their obligations under this "Temporary HAMP[1] Payment Plan"; but the servicer breached that contract by not providing a permanent modification.

¶4      The Bronsons argue that in the previous appeal we already decided that they are entitled to a trial on this counterclaim because there is a dispute of material fact about the actions of the servicer during that period.  They argue that the circuit court was thus barred, under the law of the case doctrine, from

---

[1] "HAMP" refers to the federal Home Affordable Modification Program, which the Department of the Treasury implemented to "help homeowners avoid foreclosure amidst the sharp decline in the nation's housing market in 2008." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 554 (7th Cir. 2012).

revisiting this issue after remand and again dismissing their counterclaim. We reject this argument because it is based on a misreading of our previous opinion.

¶5     Although our previous opinion did discuss the parties' factual submissions regarding that period of time, and concluded that there was a dispute of material fact, we did so only in the context of a claim that the servicer violated WIS. STAT. § 224.77 (2019-20)[2], and not in the context of a breach of contract claim. This is evident from the language of our opinion. We summarized the Bronsons' argument regarding those events as being that there was an issue of material fact as to whether the servicer "violated WIS. STAT. § 224.77 when Bank of America denied them a permanent loan modification in 2010." *Bronson*, No. 2017AP2301, at ¶44. After describing the factual averments, we concluded that they "create a dispute of material fact as to whether the servicer of the loan violated WIS. STAT. § 224.77 when it issued the 2010 loan modification denial." *Id.*, ¶56.

¶6     We did not refer to or otherwise discuss a possible breach of contract claim based on those same events. Therefore, we turn to review of the circuit court's 2021 post-remand decision dismissing this breach of contract counterclaim on summary judgment.

¶7     We review a grant of summary judgment de novo, using the same methodology as the circuit court. *Palisades Collection LLC v. Kalal*, 2010 WI App 38, ¶9, 324 Wis. 2d 180, 781 N.W.2d 503. First we determine whether the pleading, here a counterclaim, sets forth a claim for relief. *Baumeister v.*

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

*Automated Prods., Inc.*, 2004 WI 148, ¶12, 277 Wis. 2d 21, 690 N.W.2d 1. If it does, we examine the movant's submissions to determine whether they establish a prima facie case for summary judgment, here a defense. *Palisades*, 324 Wis. 2d 180, ¶9. If they do, we next examine the opposing party's submissions to determine whether material facts are in dispute entitling the opposing party to a trial. *Id.* A party is entitled to summary judgment if there is no genuine issue of material fact and that party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2).

¶8 For purposes of this opinion, we assume, without deciding, that the counterclaim's factual allegations, as described above, state a claim for breach of contract. However, we conclude that the parties' submissions, specifically the HAMP plan document itself, establish that the Bank is entitled to dismissal because no contract existed under which the Bronsons were entitled to a permanent loan modification.

¶9 On appeal, the Bronsons argue that it can reasonably be inferred from the parties' submissions that the servicer breached "the loan modification agreement." As described by the Bronsons, the HAMP plan document was "unambiguously" a contract because the servicer offered terms under which the Bronsons could send the servicer three payments and documents, and in return the servicer would modify the loan.

¶10 The Bronsons argue that they accepted those terms by sending payments and signing the plan document, and that a jury could conclude that the servicer accepted the agreement because two representatives told the Bronsons orally that they were in a modification and would receive the final papers. The

4

breach then occurred when the servicer ultimately did not send the final modification documents.

¶11    The Bronsons' description of the Home Affordable Modification Trial Period Plan document is generally accurate, but does not acknowledge certain key provisions.  We now describe the document in more detail.

¶12    The document starts by stating its purpose:

> If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Servicer will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.

¶13    In section 1, the borrowers make representations such as that they are unable to afford their mortgage payments, they live in the property as their principal residence, and they have provided documentation of their income.  Section 2 sets out a plan of "trial period payment" in a specified amount on the first day of three future months, here March through May 2010.  The document states that this is "an estimate of the payment that will be required under the modified loan terms, which will be finalized in accordance with Section 3 below."

¶14    Section 2 also contains language in which the borrowers confirm that they understand and acknowledge certain additional clauses.  One of those, section 2.B., is that the servicer will suspend any scheduled foreclosure sale while the borrowers continue to meet the obligations of the plan.

¶15    Additionally, section 2.F. provides in part:

> If prior to the Modification Effective Date [here June 1, 2010, as provided in the plan], (i) the Servicer does

not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Servicer determined that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents ….

¶16    Section 2.G. similarly provides:

I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification agreement, and (iii) the Modification Effective Date has passed.

¶17    In Section 3, the borrowers confirm that they understand that the servicer will make additional financial calculations to determine the new payment amount.    Then, "If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Servicer will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount …."

¶18    As can be seen, the plan contains language, in sections 1 and 3, that can be read as setting forth an agreement of the type the Bronsons argue, in which the servicer agrees to send a modification agreement if the borrower performs certain acts during the trial period.    However, that interpretation is not consistent with other language.

¶19    Sections 2.F. and 2.G. make it clear that "the Plan is not a modification of the Loan Documents," and that permanent modification of the loan documents is contingent on future events.    Contrary to the Bronsons' interpretation, these provisions show that the servicer is withholding its agreement

to a permanent loan modification until a future date, at which time the modification would be "finalized," rather than the servicer agreeing to such a modification in this plan document.

¶20    In addition, the contingencies that must occur before a loan modification do not relate only to whether the borrowers comply with the plan, but also to whether the servicer sends them a fully executed modification agreement. Sections 2.F. and 2.G. show that if the servicer does not send them such an agreement, the loan will not be modified and the trial plan will terminate. Therefore, by the express terms of the document that the Bronsons rely on, the act that the Bronsons assert was a contractual breach by the servicer (failure to finalize a loan modification agreement) actually functioned as a termination of the plan.  And, that termination caused a return to the status that existed before the plan, under which the servicer was permitted to pursue available remedies, including the continuation of any scheduled foreclosure sales that had been postponed under the plan.

¶21    Although the Bank's response brief highlights these provisions and argues that the trial plan document was not a contract entitling the Bronsons to modification, the Bronsons' reply does not directly refute that argument.  Instead, they rely on other provisions of the document that we described above, but they do not offer an interpretation of sections 2.F. and 2.G. that is contrary to our analysis above.  Therefore, we conclude that the submissions on summary judgment support dismissal of the counterclaim for breach of contract, because the alleged contract did not exist.

¶22    The remainder of the parties' arguments that concern this contractual counterclaim relate to whether the plaintiff Bank in this suit can be held liable for

the alleged contractual breach by the servicer, which is not a party to this suit. However, having concluded that there was no contract, and therefore no breach, we need not address these issues.

¶23 The Bronsons also argue that the circuit court erred by concluding that the circuit court previously denied their motion to amend their counterclaim to add a theory of liability based on WIS. STAT. § 224.77. That statute regulates the conduct of mortgage bankers, and can be the basis for a private action. WIS. STAT. § 224.80(2).

¶24 As discussed above, in the first appeal we reversed dismissal of a counterclaim on the basis that there was a dispute of material fact about whether the actions of the servicer violated WIS. STAT. § 224.77. Before reaching that conclusion, however, we noted that the record was not clear as to whether the § 224.77 theory of liability was properly before the court, because we were not able to determine whether in 2013 the circuit court had granted the Bronsons' motion to amend their counterclaim to add that theory. *Bronson*, No. 2017AP2301, ¶45. We assumed, without deciding, that the parties had acquiesced to the circuit court addressing this counterclaim, and we also said that "we express no view as to how the apparent gap in the record may be resolved on remand." *Id.*, ¶46.

¶25 On remand, an additional transcript from 2013 was prepared. Based on that transcript, the circuit court concluded that it had denied the Bronsons' motion to amend their counterclaim in 2013, and therefore the counterclaim based on WIS. STAT. § 224.77 was not now properly before it, notwithstanding the fact that in the first appeal this court held that there was a dispute of material fact regarding that counterclaim.

¶26 In this appeal, the Bronsons argue that the circuit court erred and that the theory of liability under WIS. STAT. § 224.77 is properly before the court. The Bronsons correctly observe that the transcript shows that the circuit court, in 2013, did not explicitly grant or deny their motion to amend their counterclaim against the plaintiff Bank. The only ruling explicitly made was to deny their motion to add Bank of America as a third-party defendant.

¶27 The Bronsons argue that a plaintiff is not required to plead legal theories when the same facts may permit recovery under more than one theory, and that the 2013 transcript shows that the court acknowledged that the Bronsons were already free to argue for liability under WIS. STAT. § 224.77 within their existing factual allegations that were initially pled to support a breach of contract theory. Accordingly, the court chose not to decide their motion to amend the counterclaim to add a § 224.77 theory, because that motion was unnecessary.

¶28 In support of that argument, they rely on the following passages from the court's ruling:

> The problem I have with adding Bank of New York (sic) to this case at this late date is we have a trial date of October 30th already set. Plaintiff is to name their witnesses on Thursday of this week. The nature of the claims that you're making here are really already alive in the lawsuit with respect to defenses against the Bank of New York. If you want to bring a separate action against the Bank of America, nobody is going to -- well somebody might try to stop you. But, you can go file that action.
>
> ….
>
> So, I'm going to leave you and the battle with the Bank of America to a different lawsuit. I think it is not necessary to a resolution of this case. You can fight the same battle in this case and not lose the scheduling order we have. So, I deny the motion to add a third party in the amendment at this point.

9

¶29     We disagree with the Bronsons' interpretation of this passage. Instead, we agree with the circuit court's interpretation in its 2021 decision. The court stated that it:

> cannot square Judge Foust's [2013] oral ruling with the concept that the pleadings were amended by the addition of the three counterclaims raised in the Bronsons' proposed Third Party Complaint Against Bank of America and First Amended Counterclaims Against Bank of New York Mellon. Not only did Judge Foust deny the request to add Bank of America as a defendant, he recognized that the claims against Bank of America, to the extent they are made against Plaintiff, are already within the original counterclaims.[3]

In other words, the court in 2013 acknowledged only the original counterclaims against the Bank of New York Mellon, and by doing so implicitly rejected the Bronsons' request, at that point in the litigation, to amend the pleadings to add new counterclaims against the Bank of New York Mellon.

¶30     The Bronsons also argue that their counterclaim should be allowed to proceed under WIS. STAT. § 224.77 because that theory was tried with the express or implied consent of the parties. They rely on WIS. STAT. § 802.09(2), which provides in relevant part: "If issues not raised by the pleadings are tried by

---

[3] The circuit court's interpretation of its 2013 ruling is further supported by statements the court made in 2013 regarding the delay that would be caused by the addition of a WIS. STAT. § 224.77 counterclaim:

> This case is a year and a half old. And if I grant your motion, this trial gets pushed back a good year I would bet. I mean, I've only seen two cases that cite 224.77. I don't know if there is anything else out there that has interpreted it. I imagine there are any number of questions. Is there a private cause of action under 224.77. How specific do your pleadings need to be. Is this like a standard fraud or misrepresentation case or do you have to plead with specificity the statements that were made that were not true. That's not in the ... proposed complaint we have here.

express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."

¶31 The Bronsons do not explain in what sense issues decided on summary judgment qualify as having been "tried" for purposes of applying this statute. *See Soderlund v. Zibolski*, 2016 WI App 6, ¶¶26-27, 366 Wis. 2d 579, 874 N.W.2d 561 (application of this statute requires a trial; at the pleading stage, the proper course is to move to amend the pleading). Therefore, we do not consider this argument further.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.