In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2620

BROWNMARK FILMS, LLC,

*Plaintiff-Appellant*,

*v.*

COMEDY PARTNERS, *et al.*

*Defendants-Appellees*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 10-cv-01013-JPS—**J.P. Stadtmueller**, *Judge*.

ARGUED JANUARY 17, 2012—DECIDED JUNE 7, 2012

Before EASTERBROOK, *Chief Judge,* and CUDAHY and HAMILTON, *Circuit Judges*.

CUDAHY, *Circuit Judge*. This is a case about how a court may dispose of a copyright infringement action based on the fair use affirmative defense while avoiding the burdens of discovery and trial. This case also poses the interesting question of whether the incorporation-by-reference doctrine applies to audio-visual works.

*South Park* is a popular animated television show intended for mature audiences. The show centers on the adventures of foul-mouthed fourth graders in the small town of South Park, Colorado. It is notorious for its distinct animation style and scatological humor. The show frequently provides commentary on current events and pop-culture through parody and satire. Previous episodes have dealt with the Florida Recount, the aftermath of hurricane Katrina and the phenomenon of celebrity sex tapes.

This case involves one episode entitled "Canada On Strike," which satirized the 2007-2008 Writers' Guild of America strike, inexplicably popular viral videos and the difficulty of monetizing Internet fame. In the episode, the nation of Canada goes on strike, demanding a share of the "Internet money" they believe is being generated by viral videos and other online content. The South Park Elementary school boys—Cartman, Stan, Kyle and Butters—decide to create a viral video in order to accrue enough "Internet money" to buy off the striking Canadians. The boys create a video, "What What (In The Butt)," (WWITB) in which Butters sings a paean to anal sex. Within the show, the video is a huge hit, but the boys are only able to earn "theoretical dollars."

This video is a parody of a real world viral video of the same name, featuring an adult male singing and dancing in tight pants. The two versions of WWITB are very similar. The *South Park* version recreates a large portion of the original version, using the same angles, framing, dance moves and visual elements. However, the

*South Park* version stars Butters, a naïve nine-year old, in a variety of costumes drawing attention to his innocence: at various points he is dressed as a teddy bear, an astronaut and a daisy.

Brownmark Films, LLC (Brownmark), the copyright holder for the original WWITB video, filed suit against South Park Digital Studios (SPDS) and others for copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*. Brownmark's complaint referenced both versions of WWITB, but it did not attach either work to the complaint. SPDS responded claiming the *South Park* version was clearly fair use under § 107, attached the two works and moved for dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Brownmark did not address the substance of SPDS's fair use defense, but instead argued that the court could not consider fair use on a 12(b)(6) motion to dismiss. The district court concluded that "[o]ne only needs to take a fleeting glance at the South Park episode" to determine that its use of the WWITB video is meant "to lampoon the recent craze in our society of watching video clips on the internet . . . of rather low artistic sophistication and quality"—in other words, fair use. The court granted SPDS's motion to dismiss based on the fair use affirmative defense.

Brownmark appeals, arguing that an unpleaded affirmative defense of fair use is an improper basis for granting a motion to dismiss under Rule 12(b)(6), and that in any event, SPDS's WWITB video is not a fair use of the original WWITB video. We hold that the district court could properly decide fair use on SPDS's motion, and we affirm the district court's finding of fair use.

I.

Brownmark correctly notes that courts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). Rule 12(b)(6) tests whether the complaint states a claim for relief, and a plaintiff may state a claim even though there is a defense to that claim. The mere presence of a potential affirmative defense does not render the claim for relief invalid. Further, these defenses typically turn on facts not before the court at that stage in the proceedings. But when all relevant facts are presented, the court may properly dismiss a case before discovery—typically through a Rule 12(c) Motion for Judgment on the Pleadings[1]—on the basis of an affirmative defense. *See id.*; *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (approving of granting motions to dismiss based on the statute of limitations when "the relevant dates [that establish the defense] are set forth unambiguously in the complaint.").

Despite Brownmark's assertions to the contrary, the only two pieces of evidence needed to decide the question of fair use in this case are the original version of WWITB and the episode at issue. Brownmark's copyright infringement claim in its amended complaint was limited to the distribution of one episode on television, *South Park*'s website, iTunes and Amazon.com, and DVD and

---

[1] Though district courts have granted Rule 12(b)(6) motions on the basis of affirmative defenses and this court has affirmed those dismissals, we have repeatedly cautioned that the proper heading for such motions is Rule 12(c), since an affirmative defense is external to the complaint.

Blu-Ray discs of "South Park Season 12 (Uncensored)." Because the claim was limited to the production and distribution of a single episode, the district court was correct to rely solely on the two expressive works referenced in Brownmark's amended complaint and attached to SPDS's motion, as well as the allegations in the complaint, to decide on the fair use defense.

SPDS relies on the incorporation-by-reference doctrine to maintain that reliance on the attached works does not violate Rule 12(d), which requires that Rule 12(b)(6) or 12(c) motions containing materials outside of the pleadings be converted into motions for summary judgment. It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider "documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). In effect, the incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment. The doctrine prevents a plaintiff from "evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

While the application of this doctrine to the present case would seem to allow SPDS's action, no court of appeals has ruled that the content of television programs and similar works may be incorporated by reference. Several

district courts have concluded that the doctrine does apply to such works. *See, e.g.*, *Burnett v. Twentieth Century Fox*, 491 F. Supp. 2d 962, 966 (C.D. Cal. 2007); *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1131-32 (C.D. Cal. 2007); *Daly v. Viacom*, 238 F. Supp. 2d 1118, 1121-22 (N.D. Cal. 2002). And we think it makes eminently good sense to extend the doctrine to cover such works, especially in light of technological changes that have occasioned widespread production of audio-visual works. The parties, however, did not brief this issue, and so we reserve the resolution of the question for a later date.

## II.

Following the recent trend of heightened pleading standards, as in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), SPDS argues that we should encourage courts to consider affirmative defenses on 12(b)(6) motions and thereby reduce the threat of nuisance suits. We are sympathetic to the goal of curtailing nuisance suits, but we feel that there is no need to enlarge the role of 12(b)(6) motions, as there are already two other rules that address the situation of dismissing baseless suits before discovery: Rule 12(c) Motion for Judgment on the Pleadings and Rule 56 Motion for Summary Judgment. Had SPDS's motion been captioned as a motion for summary judgment, the district court would have employed procedure essentially identical to procedure following a 12(b)(6) motion.

It appears SPDS's reason for relying on the incorporation-by-reference doctrine for its motion to dismiss, rather than simply captioning its motion as a motion for summary judgment, was its concern that such a maneuver would open the door to discovery. The expense of discovery, which SPDS stressed at oral argument, looms over this suit. SPDS, and amicus, the Electronic Frontier Foundation, remind this court that infringement suits are often baseless shakedowns. Ruinous discovery heightens the incentive to settle rather than defend these frivolous suits. But discovery would only follow a Rule 56 motion if the district court granted a request for discovery. District courts need not, and indeed ought not, allow discovery when it is clear that the case turns on facts already in evidence.

In this case, Brownmark did not request discovery. Brownmark claims that it could not, as the matter before the court was a 12(b)(6) motion, which does not allow for discovery requests. But this is hard to believe. The caption on a motion does not have some independent authority that litigants or courts must respect. Rather than relying on the notion that consideration of a fair use defense in the context of a 12(b)(6) motion was premature, Brownmark could have provided a list of possible evidence that would support its infringement claim and defeat SPDS's fair use defense. Indeed, Brownmark provides such a list in its briefs. Brownmark argues that it should be allowed to discover: the intent of SPDS at the time the episode was created; all relevant video images or clips, especially where such uses are divorced from the Episode; and pre-airing licensing information related

to the Episode. We noted during oral argument that such a broad discovery request, surely entailing expensive e-discovery of emails or other internal communications, gives Brownmark the appearance of a "copyright troll." We are confident that the district court would have refused to grant such expansive demands.

Therefore, rather than decide whether the videos may be incorporated-by-reference in SPDS's motion to dismiss, we elect to treat SPDS's motion as a motion for summary judgment. SPDS ought to have captioned the motion as such,[2] but the miscaptioning in this case should not have caused confusion, as the procedures for both motions are essentially the same. The only possible disadvantage to the plaintiff was the lack of notice, *see Edward Gray Corp. v. Nat'l Union Fire Ins. Co.*, 94 F.3d 363, 366 (7th Cir.

---

[2] Adopting this posture would have given SPDS greater freedom in setting out its fair-use defense. In its reply brief, Brownmark makes much of the fact that SPDS mentions Butters' naïveté, but had not introduced evidence on Butters' innocent nature. While we do not feel that this case turns on any such naïveté, SPDS could have introduced previous *South Park* episodes to show that Butters has repeatedly demonstrated a lack of understanding of sex. *See, e.g.*, *Butters' Very Own Episode* (Comedy Central television broadcast Dec. 12, 2001) (perceiving sex as wrestling), *see also Cartman Sucks* (Comedy Central television broadcast Mar. 14, 2007); *Stupid Spoiled Whore Video Playset* (Comedy Central television broadcast Dec. 1, 2004). Indeed, in one of these episodes, Butters is dressed in the same teddy bear costume he wears in the WWITB video. *Stupid Spoiled Whore Video Playset* (Comedy Central television broadcast Dec. 1, 2004).

1996), but this error is harmless when the opponent opposing the motion could not have offered any evidence in response. And as we noted above, the district court required only the two videos to adjudicate this issue, especially in light of Brownmark's failure to make any concrete contention that the *South Park* episode reduced the financial returns from the original WWITB video. The district court could properly consider an affirmative defense in the context of a motion for summary judgment, which it did here, regardless of the caption SPDS used.

## III.

Having confirmed that the district court could properly dismiss the suit on the basis of an affirmative defense at this early stage of the proceedings, all that remains is to determine if the district court erred in its fair use determination. This matter is simple because Brownmark, in response to SPDS's motion, did not address fair use as applied to the WWITB videos, and instead insisted that the court could not consider the matter at a 12(b)(6) stage. Since Brownmark never opposed SPDS's fair use argument in the district court, we consider the argument waived.

However, even if Brownmark were not barred from offering argument that SPDS did not engage in fair use, we agree with the district court that this is an obvious case of fair use. When a defendant raises a fair use defense claiming his or her work is a parody, a court can often decide the merits of the claim without discovery or a

trial. When the two works in this case are viewed side-by-side, the *South Park* episode is clearly a parody of the original WWITB video, providing commentary on the ridiculousness of the original video and the viral nature of certain YouTube videos.

The Copyright Act of 1976 sets forth four, non-exclusive factors that a court must consider in determining whether a particular use of a copyrighted work is a fair use: "(1) the purpose and character of the use . . . ; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107 (2006). We consider each factor in turn, ultimately agreeing with the district court's analysis and findings.

Central to determining the purpose and character of a work is whether the new work merely supersedes the original work, or instead adds something new with a further purpose or of a different character. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). The underlying purpose and character SPDS's work was to comment on and critique the social phenomenon that is the "viral video." Brownmark's video exemplifies the "viral video." Through one of the *South Park* characters—the innocent and naïve Butters—SPDS imitates viral video creation while lampooning one particularly well-known example of such a video. Moreover, the episode places Butters' WWITB video alongside other YouTube hits including, among others, the Numa Numa Guy, the Sneezing Panda and the Afro Ninja.

This kind of parodic use has obvious transformative value, which under § 107 is fair use. *See* § 107 (preamble); *Campbell*, 510 U.S. at 579 ("[P]arody, like other comment or criticism, may claim fair use under § 107.").

The creative and expressive nature of the original WWITB places the work within the core of copyright protection. But this factor only establishes that the original elements of WWITB are protected to the outer bounds of copyright protection, which is defined by fair use. In the case of parody, this factor offers little help to Brownmark because "parodies almost invariably copy publicly known, expressive works." *Id.* at 586.

Regarding the third factor, SPDS's use of the original WWITB was not insubstantial. Certainly, SPDS used the "heart" of the work; the work's overall design and distinctive visual elements. *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 565 (1985). But in the context of parody, "[c]opying does not become excessive in relation to parodic purpose merely because the portion taken was the original's heart." *Campbell*, 510 U.S. at 588. Parody therefore "presents a difficult case." *Id.* Indeed, it may even seem as an anomaly under fair use that parody, a favored use, must use a substantial amount of qualitative and quantitative elements to create the intended allusion; there are few alternatives. But when parody achieves its intended aim, the amount taken becomes reasonable when the parody does not serve as a market substitute for the work. *See id.* ("[H]ow much more is reasonable will depend . . . on the extent to which the [work's] overriding purpose and character is to parody the original or,

in contrast, the likelihood that the parody may serve as a market substitute for the original."). The *South Park* WWITB is clearly a parody and has not supplanted the original WWITB.

It follows from the third factor that SPDS's parody cannot have an actionable effect on the potential market for or value of the original WWITB video under the fourth factor. As the *South Park* episode aptly points out, there is no "Internet money" for the video itself on YouTube, only advertising dollars that correlate with the number of views the video has had. It seems to this court that SPDS's likely effect, ironically, would only increase ad revenue. Any effect on the derivative market for criticism is not protectable. *Id.* at 592. And the plaintiff has failed to give the district court or this court any concrete suggestion about potential evidence indicating that the *South Park* parody has cut into any real market (with real, non-Internet dollars) for derivative uses of the original WWITB video.

We agree with the district court's well-reasoned and delightful opinion. For these reasons, the judgment of the district court is AFFIRMED.