WALLACE, J., Senior Circuit Judge,
concurring in part and dissenting in part:
I agree with the bulk of the majority decision as to the law, including the majority’s determination that the district court incorrectly imposed a requirement that the allegedly infringing works comment on the original works to be entitled to a fair use defense. See Cariou v. Prince, 784 F.Supp.2d 337, 348-49 (S.D.N.Y.2011). I nevertheless part company with the majority.
While we may, as an appellate court, determine that secondary works are fair use in certain instances, see Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 560, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985), in the usual case, after correcting an erroneous legal standard employed by the district court, we would remand for reconsideration. This standard, I suggest, should apply here where factual determinations must be reevaluated—and perhaps new evidence or expert opinions will be deemed necessary by the fact finder—after which a new decision can be made under the corrected legal analysis. But the majority short-circuits this time-tested search for a just result under the law. I would not apply the shortcut but would set aside the summary judgment, remand the entire case to the district court, and allow the district court to ana *713 lyze material evidence under the proper standard.
Unlike the majority, I would allow the district court to consider Prince’s statements in reviewing fair use. While not the sine qua non of fair use, see Blanch v. Koons, 467 F.3d 244, 255 n. 5 (2d Cir.2006), I see no reason to discount Prince’s statements as the majority does. While it may seem intuitive to assume that a defendant claiming fair use would typically give self-serving ex post facto testimony to support a defense, this Court has nevertheless relied on such statements when making this inquiry—even if just to confirm its own analysis. See id. at 252-53, 255; see also Castle Rock Entm’t, Inc. v. Carol Publ’g Grp., Inc., 150 F.3d 132, 142 (2d Cir.1998) (looking to statements of the allegedly infringing work’s creators when analyzing the purpose and character of the secondary work). Thus, I view Prince’s statements—which, as Prince acknowledges, consist of “his view of the purpose and effect of each of the individual [p]aint-ings”—as relevant to the transformativeness analysis.
The majority relies on the Seventh Circuit’s decision in Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687 (7th Cir.2012), for the proposition that all the Court needs to do here to determine trans-formativeness is view the original work and the secondary work and, apparently, employ its own artistic judgment. In my view, Brownmark cannot be extended so far. Brownmark arose under an unusual procedural posture: a motion to dismiss based on a non-pleaded fair use affirmative defense converted into a motion for, summary judgment on appeal. See id. The court in Brownmark determined that it needed only to review the allegedly infringing video against the original to determine that the secondary work was permissible parody. Id. at 692-93. It appears to me, however, that Brownmark left open the possibility that additional evidence could be relevant to the fair use inquiry in a different procedural context. See id. at 692 n. 2 (identifying that the defendant could have put forth additional evidence to bolster its fair use defense if the case arose from a typical summary judgment motion); id. at 692 (stating that the district court was only' required to consider the original and secondary videos, “especially in light of [the plaintiffs] failure to make any concrete contention” as to the secondary video’s potential market impact).
Further, Brownmark apparently arose in the context of a clear case of parody—so obvious that the appeals court affirmed the district court’s conclusion that fair use was evident from even a “fleeting glance” at the original and secondary works. Id. at 689-90. I do not believe that the transfor-mativeness of Prince’s works—which have not been presented as parody or satire— can be so readily determined. Because this case arises after extensive discovery and argument by the parties, I disagree that we must limit our inquiry to our own artistic perceptions of the original and secondary works.
Indeed, while I admit freely that I am not an art critic or expert, I fail to see how the majority in its appellate role can “confidently” draw a distinction between the twenty-five works that it has identified as constituting fair use and the five works that do not readily lend themselves to a fair use determination. This, mind you, is done on a summary judgment review with no understanding of what additional evidence may be presented on remand. I also fail to see a principled reason for remanding to the district court only the five works the majority identifies as close calls, although I agree that they must be sent back to the trial court. If the district *714 court is in the best position to determine fair úse as to some paintings, why is the same not true as to all paintings? Certainly we are not merely to use our personal art views -to make the new legal application to the facts of this case. Cf. Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 582, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994) (“ ‘[I]t would be a dangerous undertaking 'for persons trained only to the law to constitute themselves final judges of the worth of [a work], outside of the narrowest and most obvious limits’ ”), quoting Bleistein v. Donaldson Lithographing Co., 188 U.S. 239, 251, 23 S.Ct. 298, 47 L.Ed. 460 (1903). It would be extremely uncomfortable for me to do so in my appellate capacity, let alone my limited art experience.
In my view, because the district court takes the primary role in determining the facts and applying the law to the facts in fair use cases, after which we exercise our appellate review if called upon to do so, I conclude that as to each painting, “the district court is best situated to determine, in the first instance,” whether Prince is entitled to a fair use defense in light of the correct legal standard. See majority opinion at 711-12. I mean no disrespect to the majority, but I, for one, do not believe that I am in a position to make these fact- and opinion-intensive decisions on the twenty-five works that passed the majority’s judicial observation. I do not know what additional facts will become relevant under the corrected rule of law, nor am I trained to make art opinions ab initio.
I would thus remand the entire case—all thirty of Prince’s paintings—for further proceedings in the district court on an open record to take such additional testimony as needed and apply the correct legal standard. On this basis, therefore, I respectfully dissent.