COURT OF APPEALS
DECISION
DATED AND FILED

December 14, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1110**

STATE OF WISCONSIN

Cir. Ct. No. 2021CV1039

IN COURT OF APPEALS
DISTRICT IV

---

ZHIWEI JIANG, JIAN CHEN, QI LU AND AADM LLC,

    PLAINTIFFS-APPELLANTS,

KEYLIAN INVESTMENT I, LLC,

    INVOLUNTARY-PLAINTIFF,

  V.

MERIT CRO, INC. AND YIJUN HUANG,

    DEFENDANTS-RESPONDENTS,

CHAOHUI YANG AND KEYLIAN INVESTMENT ADVISORS, LLC,

    DEFENDANTS.

---

APPEAL from an order of the circuit court for Dane County: FRANK D. REMINGTON, Judge. *Affirmed*.

Before Kloppenburg, P.J., Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Zhiwei Jiang, Jian Chen, Qi Lu, and AADM LLC ("The Investors") appeal a circuit court order dismissing their complaint against Merit CRO, Inc. (formerly, EyeKor, Inc.),[1] Yijun Huang, Chaohui Yang, and Keylian Investment Advisors, LLC. The Investors argue that the circuit court erred when it dismissed their breach of contract claim because of an accord and satisfaction, and dismissed their fraud in the inducement claim because it is barred by the economic loss doctrine.[2] We conclude that the Investors' breach of contract claim is barred by an accord and satisfaction and that the Investors failed to sufficiently plead a claim for fraud in the inducement. Accordingly, we affirm the circuit court's order dismissing the Investors' complaint.

## BACKGROUND

¶2 Unless otherwise noted, the following facts are from the complaint, from documents attached to the complaint, and from a document, the "Prepayment Agreement," that was attached to EyeKor and Huang's motion to dismiss, which the circuit court considered as having been incorporated by reference into the complaint.[3]

---

[1] EyeKor, Inc. changed its name to Merit CRO, Inc. in 2021. We use the name "EyeKor" in this opinion, which is consistent with the parties' briefs.

[2] The circuit court dismissed the Investors' entire complaint, which included eight different claims. On appeal, the Investors challenge the dismissal of only their breach of contract and fraud in the inducement claims.

[3] "[A] court may consider a document attached to a motion to dismiss or for judgment on the pleadings without converting the motion into one for summary judgment, if the document was referred to in the plaintiff's complaint, is central to his or her claim, and its authenticity has not

(continued)

¶3    EyeKor was founded in 2012 as a "Contract Research Organization" that specializes in medical imaging and data management for clinical studies. Huang is one of EyeKor's founders.

¶4    Keylian, a Delaware limited liability company, was formed in 2019 for the specific purpose of investing in EyeKor. Attached to Keylian's Operating Agreement is a "Term Sheet for Convertible Promissory Note Financing of EyeKor" (the "Term Sheet")—an "expression of intent" that stated that Keylian planned to invest in EyeKor in exchange for a promissory note.[4] The Term Sheet reflects an intention that the note would mature after twelve months, at which point Keylian could choose between being repaid the outstanding principal and unpaid accrued interest or converting Keylian's investment into EyeKor shares. The Term Sheet further reflects that EyeKor planned to use Keylian's investment to redeem equity from shareholders and to reorganize so that "collectively, Yijun Huang, CTO and President, and [Keylian] will become the majority owners of the Company."

_____

been disputed." *Soderlund v. Zibolski*, 2016 WI App 6, ¶37, 366 Wis. 2d 579, 874 N.W.2d 561. The Investors do not argue on appeal that the circuit court should not have considered the Prepayment Agreement on a motion to dismiss.

[4] Although the unsigned version of Keylian's Operating Agreement that the Investors attached to the complaint does not include the Term Sheet, EyeKor and Huang submitted a signed copy of the Operating Agreement with their motion to dismiss that does. The circuit court did not consider the version of the Operating Agreement that includes the Term Sheet because the court determined that its authenticity was disputed. *See Soderlund*, 366 Wis. 2d 579, ¶37 (requiring that the authenticity of a document attached to a motion to dismiss be undisputed for a court to consider it). However, based on our review of the record, it does not appear that the Investors disputed the authenticity of the version of the Operating Agreement that EyeKor and Huang submitted with their motion to dismiss. Accordingly, it would appear that the court could have considered that version of the Operating Agreement, which includes the Term Sheet. In any event, although we mention the contents of the Term Sheet here, these facts are not essential to the legal analysis that follows.

¶5    Keylian's Operating Agreement appointed Keylian Investment Advisors, LLC ("KIA") as its manager, in which "management or control of [Keylian's] business" was "vested solely and exclusively."  KIA's sole controlling member was Yang.

¶6    The Investors, who are three individuals and one New Jersey limited liability company (AADM, LLC), became Keylian members.

¶7    In February 2020, pursuant to a Convertible Note Purchase Agreement ("the Purchase Agreement"), EyeKor sold and issued, and Keylian purchased, a Convertible Promissory Note ("the Note").  Keylian paid EyeKor $3,100,000.  In exchange, EyeKor issued to Keylian the Note, which stated that EyeKor, after a period of one year, would pay Keylian the Note's principal of $3,100,000 plus interest at an annual rate of 12%, unless Keylian elected to convert the investment into EyeKor shares at a set conversion price.  The Note's maturity date, originally February 7, 2021, was subsequently extended to August 7, 2021.

¶8    The Note stated that if EyeKor effected a "Change in Control" before the Note was paid in full or converted to EyeKor shares, Keylian could receive either:  (a) a cash repayment of the Note's outstanding principal and unpaid accrued interest, plus an additional payment of 50% of the Note's outstanding principal (the "change-in-control premium"), or (b) EyeKor shares in proportion, using a set conversion price, to the outstanding principal and unpaid accrued interest.  "Change in Control" is defined, in part, as including when any person became the beneficial owner of 70% or more of EyeKor's shares, if the person owned 30% or less of EyeKor's shares before the acquisition.

¶9 EyeKor used the capital from Keylian's investment to redeem outstanding shares, and Huang acquired irrevocable proxies from three of EyeKor's shareholders. As a result, Huang acquired beneficial ownership of 97% of EyeKor's shares. Before EyeKor redeemed the outstanding shares and Huang acquired the irrevocable proxies, Huang had owned approximately 26% of EyeKor's shares.

¶10 Following EyeKor's redemption of stock and reorganization, the Investors demanded that EyeKor pay the Note's change-in-control premium. EyeKor refused and denied that a "change in control" had occurred.

¶11 In April 2021, Yang invited Keylian's members to participate in an "advisory vote" and to choose one of two options. First, under the "Dissolution Proposal," Keylian would waive the right to pursue the change-in-control premium under the Note, collect the Note's principal and accrued interest for a gross return of 14% on Keylian's investment, distribute Keylian's assets, and dissolve. The distribution of assets was conditioned on Keylian members executing a "general release and waiver in favor of" Yang, Keylian, and EyeKor, among others. Under the alternative "Litigation Proposal," Keylian would file suit against EyeKor to recover the Note's change-in-control premium. Yang recommended the "Dissolution Proposal" and "reserve[d] the right to implement, or abandon, in [his] sole discretion, some or all portions of either the Dissolution Proposal or Litigation Proposal pursuant to the broad authority granted to the Manager under … the Operating Agreement."[5]

---

[5] In the letter that Yang sent to Keylian's members, Yang stated that he did not believe that there had been a change in control, presumably for the same reasons that EyeKor denied there had been a change in control. Yang stated that Huang's acquisition of irrevocable proxies and EyeKor's redemption of outstanding shares were two separate transactions and that neither transaction, viewed individually, constituted a change in control. Yang also stated that the execution of the Note, Huang's acquisition of proxies, and EyeKor's redemption of shares were

(continued)

5

¶12     Yang conveyed to Keylian's members that members holding a majority of Keylian's capital contributions supported the dissolution proposal, which Yang implemented.  Keylian and EyeKor executed a "Prepayment of Convertible Promissory Note" agreement (the "Prepayment Agreement"), pursuant to which the parties agreed that the Note was fully prepaid on April 18, 2021.

¶13     In May 2021, the Investors commenced arbitration against Yang, KIA, and Keylian.  As part of a settlement agreement reached in November 2021, Yang, KIA, and Keylian assigned to the Investors all of Keylian's claims against EyeKor and Huang, including those related to the Note's change-in-control premium.

¶14     In April 2021, shortly before commencing arbitration, the Investors commenced this action.  This appeal concerns the circuit court's dismissal of the Investors' Second Amended Complaint, which names EyeKor, Huang, Yang, and KIA as defendants.[6]   The complaint includes eight different claims, brought individually and on behalf of Keylian,[7] only two of which are at issue on appeal. First, the Investors claim that EyeKor breached the Note by failing to pay the change-in-control premium.  Second, they claim that EyeKor and Huang fraudulently induced Keylian's members into voting in support of prepaying the Note under the "Dissolution Proposal."

---

contemplated as a series of related transactions that neither Keylian nor EyeKor anticipated would trigger the Note's change-in-control provision.

[6] The Second Amended Complaint is the operative complaint for purposes of this appeal. For ease of reference, we refer to the Second Amended Complaint simply as "the complaint."

[7] The complaint names Keylian as an involuntary plaintiff.

¶15    The circuit court dismissed these claims pursuant to WIS. STAT. § 802.06(2)(a)6. (2021-22).[8]   The court reasoned that the Investors' breach of contract claim is barred because there was an accord and satisfaction, namely, the Prepayment Agreement that was executed by Keylian and EyeKor on April 18, 2021.  Regarding the Investors' fraudulent inducement claim, the court determined that it is barred by the economic loss doctrine.

¶16    The Investors appeal.

## DISCUSSION

¶17    As noted, the Investors limit their appeal to two issues:  whether their breach of contract claim was properly dismissed because they conceded an accord and satisfaction, and whether their fraudulent inducement claim is barred by the economic loss doctrine.

*I.  General principles governing review.*

¶18    The Investors' breach of contract and fraudulent inducement claims were dismissed pursuant to WIS. STAT. § 802.06(2)(a)6. for failure to state a claim upon which relief may be granted.  "We review a [circuit] court's decision to dismiss a complaint de novo." *Fee v. Board of Rev.*, 2003 WI App 17, ¶7, 259 Wis. 2d 868, 657 N.W.2d 112.  "[F]actual allegations in the complaint are accepted as true for purposes of our review." *Data Key Partners v. Permira Advisers, LLC*, 2014 WI 86, ¶18, 356 Wis. 2d 665, 849 N.W.2d 693.  However, "legal conclusions asserted in a complaint are not accepted, and legal conclusions are insufficient to withstand a motion to dismiss." *Id.*  In order to withstand a

---

[8] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

motion for failure to state a claim, "a complaint must plead facts, which if true, would entitle the plaintiff to relief." *Id.*, ¶¶20-21. Put another way, a complaint "must allege facts that, if true, plausibly suggest a violation of applicable law." *Id.*, ¶21.

¶19 This appeal also requires that we interpret contracts, which we likewise review de novo. *Marx v. Morris*, 2019 WI 34, ¶20, 386 Wis. 2d 122, 925 N.W.2d 112.

II. *The complaint, through its incorporation by reference of the Prepayment Agreement, concedes an accord and satisfaction that defeats the Investors' breach of contract claim.*

¶20 The Investors argue that their contract claim is not barred by an accord and satisfaction because the complaint does not concede that the Prepayment Agreement settled the Note, and because, even if it did, the complaint alleges that the Prepayment Agreement was fraudulently induced. EyeKor counters that the Prepayment Agreement between EyeKor and Keylian settled any existing dispute about whether EyeKor owed Keylian the change-in-control premium and that the complaint does not allege that the Prepayment Agreement was fraudulently induced.

¶21 As explained below, we conclude that the complaint, through its incorporation by reference of the Prepayment Agreement, establishes that there was an accord and satisfaction that is fatal to the Investors' breach of contract claim. Additionally, we conclude that the complaint does not sufficiently plead that the Prepayment Agreement was fraudulently induced and therefore invalid.

### A. The Prepayment Agreement, which was incorporated by reference into the complaint, constitutes an accord and satisfaction.

¶22 "An accord and satisfaction is an agreement to discharge an existing disputed claim and constitutes a defense to an action to enforce the claim." *Lovelien v. Austin Mut. Ins. Co.*, 2018 WI App 4, ¶7, 379 Wis. 2d 733, 906 N.W.2d 728.

¶23 Procedurally, an accord and satisfaction is an affirmative defense. *Hoffman v. Ralston Purina Co.*, 86 Wis. 2d 445, 453, 273 N.W.2d 214 (1979). This is significant because here, the complaint was dismissed for failure to state a claim upon which relief can be granted under WIS. STAT. § 802.06(2)(a)6. Generally, a complaint need not anticipate and refute potential affirmative defenses. *Robinson v. Mount Sinai Med. Ctr.*, 137 Wis. 2d 1, 16, 402 N.W.2d 711 (1987). But, "[w]hile a complaint need not specifically deny the existence of any and all affirmative defense, it can, by inadvertence or otherwise, create or concede an affirmative defense fatal to its validity." *Thomas v. Kells*, 53 Wis. 2d 141, 145, 191 N.W.2d 872 (1971).[9] Accordingly, we must determine whether the Investors' complaint conceded an accord and satisfaction.

---

[9] We note that some federal courts have stated that when a complaint concedes a fatal affirmative defense, judgment on the pleadings is the appropriate mechanism for dismissal rather than dismissal for failure to state a claim upon which relief can be granted. *See, e.g.*, *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 n.1 (7th Cir. 2012) ("Though district courts have granted [FED. R. CIV. P.] 12(b)(6) motions on the basis of affirmative defenses and this court has affirmed those dismissals, we have repeatedly cautioned that the proper heading for such motions is [FED. R. CIV. P.] 12(c), since an affirmative defense is external to the complaint."). The Investors do not raise the issue, however, so we need not address it. In any event, the outcome would be the same in this case had the motion been construed as a motion for judgment on the pleadings.

¶24 A valid accord and satisfaction requires two elements: there must be a good-faith dispute about a debt, and the creditor must have reasonable notice that the payment is intended to fully satisfy the debt. *Kubichek v. Kotecki*, 2011 WI App 32, ¶35, 332 Wis. 2d 522, 796 N.W.2d 858; *see also **Hoffman***, 86 Wis. 2d at 453 ("There must be expressions sufficient to make the creditor understand or to make it unreasonable for him not to understand that the performance is offered in full satisfaction of the claim.").

¶25 As to the first element, the complaint alleges that there is a good-faith dispute about a debt. The Investors' disagreement about whether EyeKor must pay the Note's change-in-control premium is at the center of the litigation, and the Investors allege that EyeKor "unjustifiably den[ied]" that there was a change in control and that EyeKor breached the Note by failing to pay Keylian the change-in-control premium.

¶26 As to the second element, the payment that EyeKor argues constitutes an accord and satisfaction was made pursuant to the Prepayment Agreement between EyeKor and Keylian. The Prepayment Agreement shows that EyeKor intended, and that Keylian understood, that the payment would fully satisfy EyeKor's obligations under the Note.

¶27 The circuit court, as noted above, considered the Prepayment Agreement, which was submitted with EyeKor's motion to dismiss, after deciding that the Prepayment Agreement had been incorporated by reference into the complaint. *See **Soderlund v. Zibolski***, 2016 WI App 6, ¶37, 366 Wis. 2d 579, 874 N.W.2d 561. The Investors do not argue that the court should not have considered the Prepayment Agreement as having been incorporated by reference. We

therefore assume that the court properly considered the Prepayment Agreement, and we likewise do the same.

¶28 The Prepayment Agreement shows that Keylian and EyeKor understood and intended that EyeKor's payment pursuant to the agreement would fully satisfy EyeKor's obligations under the Note. The Prepayment Agreement states that, pursuant to the Purchase Agreement, EyeKor issued Keylian the Note, which had a maturity date of August 7, 2021. The Prepayment Agreement then states that EyeKor would pay Keylian the Note's principal and accrued interest prior to the Note's maturation date: "[Keylian] elects not to convert the Note into Conversion Securities.… [EyeKor] and [Keylian] agree that the Note is fully prepaid on **April 18, 2021**. [EyeKor] agrees that [the] full principal amount and accrued interest of the Note shall be paid to [Keylian]."

¶29 This language—specifically the agreement "that the Note is *fully* prepaid"—evinces a mutual understanding that EyeKor's payment was intended by both parties to satisfy EyeKor's obligations under the Note. (Emphasis added.) *See Niebler & Muren, S.C. v. Brock-White Co. of Wis., Inc.*, 122 Wis. 2d 445, 448, 361 N.W.2d 732 (Ct. App. 1984) (certifying a check marked "paid in full" constituted an accord and satisfaction); *Butler v. Kocisko*, 166 Wis. 2d 212, 219, 479 N.W.2d 208 (Ct. App. 1991) (cashing a check marked "Payment in Full" constituted an accord and satisfaction); *Olson v. Northwestern. Furniture Co.*, 6 Wis. 2d 178, 182, 94 N.W.2d 179 (1959) ("It appears to be the general rule … that a notation 'in full' upon the check sufficiently shows that the payment was tendered upon the condition that it be accepted in full satisfaction."). Accordingly, the complaint, through its incorporation of the Prepayment Agreement, concedes that there was an accord and satisfaction as to the Investors' breach of contract claim.

*B. The complaint does not sufficiently allege that the Prepayment Agreement was fraudulently induced.*

¶30 Having concluded that the Prepayment Agreement constitutes an accord and satisfaction, we next address the Investors' argument that this accord and satisfaction is not fatal to their breach of contract claim because the complaint sufficiently alleges that the Prepayment Agreement was fraudulently induced and is therefore invalid.[10]

¶31 An accord and satisfaction is a contract, *Kubichek*, 332 Wis. 2d 522, ¶34, and ordinary contract principles apply when determining whether an accord and satisfaction was reached, *Hoffman*, 86 Wis. 2d at 453. As with any contract, an accord and satisfaction is not valid if fraudulently obtained. *See Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶36, 270 Wis. 2d 146, 677 N.W.2d 233 ("A contract fraudulently induced is void or voidable …."); *Jackowski v. Illinois Steel Co.*, 103 Wis. 448, 79 N.W. 757, 759 (1899) (endorsing as "undoubtedly sound" cases that "sanctioned the setting aside of an accord and satisfaction on the ground of fraud").

¶32 The Investors argue that they did not concede an accord and satisfaction because "[they] properly alleged that the Prepayment Agreement, which purportedly support[ed] a finding of an accord an satisfaction, was

---

[10] In their reply brief, the Investors also argue that the complaint sufficiently alleges that the Prepayment Agreement is invalid for lack of member approval. Specifically, the Investors argue that Yang, under Keylian's Operating Agreement, was required to, but did not, obtain approval from Keylian's members before entering the Prepayment Agreement. Although the Investors' brief-in-chief quotes allegations from the complaint that the Prepayment Agreement is invalid for lack of member approval, the Investors do not argue in their brief-in-chief that the Prepayment Agreement is invalid for this reason. Accordingly, we do not address this argument. *See State v. Mata*, 230 Wis. 2d 567, 576 n.4, 602 N.W.2d 158 (Ct. App. 1999) ("We do not address issues raised for the first time in a reply brief.").

fraudulently induced and invalid as a matter of law." EyeKor and Huang argue that the Investors have not sufficiently pled the elements of fraud in the inducement because they do not allege that Keylian, itself, was fraudulently induced to enter the Prepayment Agreement. We agree.

¶33 To establish a fraudulent misrepresentation that renders a contract voidable, there are three elements. *Merten v. Nathan*, 108 Wis. 2d 205, 209 n.2, 321 N.W.2d 173 (1982). "[T]here must be a statement of fact which is untrue," "the false statement must be made with intent to defraud and for the purpose of inducing the other party to act upon it," and "the other party must rely on the false statement and must be induced thereby to act to his injury or damage." *Id.* The Investors fail to properly plead this last element because they do not allege that Keylian was induced to take action in reliance on allegedly false statements.[11]

¶34 The Investors allege that Yang, acting at the direction of EyeKor and Huang, misled Keylian's members regarding whether a change in control occurred and the odds of success and the costs of pursuing the change-in-control premium through litigation, thereby fraudulently inducing them to vote for entering the Prepayment Agreement as part of the "Dissolution Proposal," and that based on their votes, Yang entered the Prepayment Agreement on behalf of Keylian. Although the Investors allege that *Keylian's members* were fraudulently induced to vote for the "Dissolution Proposal," they do not allege that *Keylian* was fraudulently induced into entering the Prepayment Agreement.

---

[11] Because we conclude that the Investors do not sufficiently allege reliance, we need not address whether they sufficiently allege the other elements.

¶35    The Investors' allegations are insufficient to state a claim for fraud in the inducement because Keylian, a Delaware limited liability company, is an individual entity that is legally separate from its members.  *See* DEL. CODE ANN. tit. 6, § 18-201 (West) ("A limited liability company formed under this chapter shall be a separate legal entity ...."); ***Wood v. U.S. Bank Nat'l Ass'n***, 246 A.3d 141, 148 (Del. Ch. 2021) ("The Delaware Uniform Limited Liability Act … makes clear that an LLC has a separate juridical existence distinct from its members."); WIS. STAT. § 183.0901(1) ("The governing law of a foreign limited liability company governs … [t]he internal affairs of the company ...."). The Investors overlook this distinction, and they conflate Keylian's members with Keylian itself.  For example, the Investors argue that they "specifically pled that Huang and Yang deliberately and intentionally misled [the Investors] and other Keylian members with affirmative falsehoods and untrue statements as to the occurrence of the Change in Control at EyeKor, *which Keylian members relied upon in executing the Prepayment Agreement*."  (Emphasis added.)  But Keylian's members did not execute the Prepayment Agreement—Keylian did.  And Keylian did so acting through its manager, KIA, whose sole controlling member was Yang.

¶36    Accordingly, it was Yang who signed the Prepayment Agreement on behalf of Keylian.  Under Keylian's Operating Agreement, Yang had exclusive authority to conduct Keylian's business as the sole controlling member of KIA, Keylian's Manager.  In contrast, the Operating Agreement states that Keylian's members "shall not participate in the management or control of the Company's business nor shall they transact any business for the Company, nor shall they have the power to act for or bind the company."  Moreover, Keylian's Operating Agreement states that "[a]ny Person dealing with [Keylian], other than a Member,

may rely on the authority of the Manager in taking any action in the name of [Keylian]."

¶37    As a result, in the letter in which Yang solicited "advisory votes" from Keylian's members, Yang explicitly stated that he would exercise his discretion as manager in determining how to proceed:

> Regardless of the outcome of the advisory vote on the Proposals, the Manager reserves the right to implement, or abandon, in its sole discretion, some or all portions of either the Dissolution Proposal or Litigation Proposal pursuant to the broad authority granted to the Manager under … the Operating Agreement. The Manager reserves the right to take any actions allowed to it under the Operating Agreement, which include unilaterally implementing some or all of the actions described in the Proposals.

¶38    The Investors' fraudulent inducement claim fails because the Investors allege that Yang was aware of the fraud—that he "agreed" and "acquiesced" to mislead Keylian's members at EyeKor and Huang's direction. Yang cannot have made these allegedly fraudulent misrepresentations, which he allegedly knew were fraudulent, and then also, on Keylian's behalf, have fallen victim to them by being induced to enter the Prepayment Agreement.[12]

¶39    Because the Investors do not adequately plead that Keylian was fraudulently induced into entering the Prepayment Agreement, the Prepayment

---

[12] EyeKor and Huang argue that Yang's knowledge can be imputed to Keylian and cite WIS. STAT. § 183.0303(2)(a) (2019-20): "If management of the limited liability company is vested in one or more managers … [n]otice to any manager of any matter relating to the business of the limited liability company, and the knowledge of the manager acting in the particular matter, acquired while a manager or known by the person at the time of becoming a manager … operate as notice to or knowledge of the limited liability company." The Investors do not respond or otherwise argue that different law applies; we therefore assume that Yang's knowledge can be imputed to Keylian.

Agreement constitutes a valid accord and satisfaction that is fatal to the Investors' breach of contract claim. Accordingly, the circuit court properly dismissed this claim.

### III. *The Investors' fraudulent inducement claim was properly dismissed.*

¶40 The Investors argue that the circuit court erred when it dismissed their fraudulent inducement claim as barred under the economic loss doctrine. Specifically, they argue that the fraud in the inducement exception to the economic loss doctrine applies. EyeKor and Huang argue that we need not reach the issue of whether the fraud in the inducement exception to the economic loss doctrine applies because, in the first place, the Investors do not adequately plead their fraud in the inducement claim. We agree.

¶41 We note first that the Investors do not appear to have argued before the circuit court that the fraud in the inducement exception to the economic loss doctrine applies, and that "[w]e normally will not review an issue raised for the first time on appeal." *See Segall v. Hurwitz*, 114 Wis. 2d 471, 489, 339 N.W.2d 333 (Ct. App. 1983). Setting that aside, however, as explained above in the context of determining whether the Investors conceded an accord and satisfaction, the Investors do not adequately plead the elements of fraudulent inducement. Specifically, they do not sufficiently allege that there was any reliance resulting in injury because they do not allege that Keylian was fraudulently induced into entering the Prepayment Agreement. *See Merten*, 108 Wis. 2d at 209 n.2; *see also* 37 C.J.S. *Fraud* § 49 (2023) ("A plaintiff asserting fraud by misrepresentation is obliged to plead and prove actual reliance, that is, to establish a complete causal relationship between the alleged misrepresentations and the harm claimed to have resulted therefrom."). Additionally, for the same reason, the fraud in the inducement exception to the economic loss doctrine would not apply: for the exception to apply, the Investors must plausibly allege that there was an

16

intentional misrepresentation, which in turn requires that the Investors allege that Keylian relied on an untrue factual representation that resulted in injury to Keylian. *See **Kaloti Enters., Inc. v. Kellogg Sales Co.***, 2005 WI 111, ¶¶12, 42, 283 Wis. 2d 555, 699 N.W.2d 205. As stated, the Investors fail to do so here. Because the Investors do not sufficiently plead the elements of fraudulent inducement, the circuit court properly dismissed this claim.

## CONCLUSION

¶42 For the reasons stated, we affirm the circuit court order dismissing the Investors' complaint.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.